### G. GULBENKIAN & CO. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. March 26, 1907.)

No. 234 (4,125).

CUSTOMS DUTIES—APPRAISEMENT—MIXED WOOLS.

    White and colored wools were sold together in the Bagdad market at one price, without any distinction as to color; this being in accord with immemorial practice in that market. *Held*, that in finding "the actual market value * * * in the principal markets of the country whence imported, and in the condition in which such merchandise is there bought and sold for exportation to the United States," under Customs Administrative Act June 10, 1890, c. 407, § 19, 26 Stat. 139 [U. S. Comp. St. 1901, p. 1924], both kinds of wool should be appraised at the same price, in accordance with the manner of purchase, without regard to any difference in value which may attach to each kind in any other country.

Appeal from the Circuit Court of the United States for the Southern District of New York.

The decision below affirmed a decision of the Board of United States General Appraisers (G. A. 6,151 [T. D. 26,719]), which had affirmed the assessment of duty by the collector of customs at the port of New York. The importation in controversy consisted of 1,000 bales of wool, of which 800 were

invoiced as white, and 200 as colored. This wool was the subject of reappraisement proceedings under Customs Administrative Act June 10, 1890, c. 407, § 13, 26 Stat. 136 [U. S. Comp. St. 1901, p. 1932], before a single General Appraiser, and then, on appeal, before a board of three' General Appraisers, as a result of which an advance in value as to the white bales, which was made by the local appraiser, stood affirmed. Proceedings were then brought by the importers under section 14 of said act (26 Stat. 137 [U. S. Comp. St. 1901, p. 1933]), for the purpose of testing the legality of the appraisement and the reappraisements; and at the hearing before the Board of General Appraisers in these latter proceedings the importers introduced evidence intended to show that the appraisement by the local appraiser was illegal. The Board, however, held that, whatever irregularity may have characterized that appraisement, it would have been cured by a valid reappraisement, and that there was no evidence that the reappraisements before a single General Appraiser had not been properly made. The assessment of duty was therefore affirmed. In the Circuit Court, on appeal, considerable additional evidence was introduced by the importers.

The pertinent part of section 19 of said act (26 Stat. 139 [U. S. Comp. St. 1901, p. 1924]), the construction of which is involved herein reads as follows: "Sec. 19. That whenever imported merchandise is subject to an ad valorem rate of duty, or to a duty based upon or regulated in any manner by the value thereof, the duty shall be assessed upon the actual market value or wholesale price of such merchandise as bought and sold in usual wholesale quantities, at the time of exportation to the United States, in the principal markets of the country from whence imported, and in the condition in which such merchandise is there bought and sold for exportation to the United States, or consigned to the United States for sale, including the value of all cartons, cases, crates, boxes, sacks, and coverings of any kind, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States."

The opinion filed by the court below reads as follows:

WHEELER, District Judge. These are white and colored wools, mostly white, coming from Bagdad. They are by practice sold there at the same price, although the white is worth considerably the most for bringing here, and they have been appraised here according to that difference. The principal question seems to be whether the appraisers here must follow that practice in ascertaining the actual market value or wholesale price of the wool, or may the actual value of each there separately for exportation to this country be ascertained. That arbitrary practice does not aid in ascertaining, but rather conceals, the actual market value of the white wool, and it should not be followed when it would have that effect.

Some questions have been made about the regularity of the first appraisals, but these were appealed from, and the proceedings on the appeals seem to be the only ones in question, and they do not appear to be radically wrong when the basis is found to be right.

The paragraphs of Tariff Act July 24, 1897, c. 11, § 1, 30 Stat. 182, 183 [U. S. Comp. St. 1901, pp. 1664, 1665, 1666], in question are as follows:

"Par. 351. Class three, that is to say, Donskoi, native South American, Cordova, Valparaiso, native Smyrna, Russian camel's hair, and all such wools of like character as have been heretofore usually imported into the United States from Turkey, Greece, Syria, and elsewhere, excepting improved wools hereinafter provided for."

"Par. 358. On wools of the third class and on camel's hair of the third class, the value whereof shall be twelve cents or less per pound, the duty shall be four cents per pound.

"Par. 359. On wools of the third class, and on camel's hair of the third class, the value whereof shall exceed twelve cents per pound, the duty shall be seven cents per pound."

Hatch & Clute (J. Stuart Tompkins, of counsel), for importers.
J. Osgood Nichols, Asst. U. S. Atty.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge. The question in controversy is, whether the wool brought here from Bagdad, Turkey, shall pay four cents per pound under paragraph 358 or seven cents per pound under paragraph 359. If the value of the wool was twelve cents or less per pound the appellants should succeed; if more than twelve cents per pound the appellee should succeed.

There is no disputed question of fact. The wool in question, without any distinction as to color, was purchased by the importers at Bagdad for 7.36 piasters per oke and, after adding all packing charges required by section 19 of the administrative act, the value of the wool at Bagdad was less than twelve cents per pound.

The appellants have been importing wool from Bagdad for twenty-five years. They purchased white and colored wool in the market for the same price and always invoiced their purchases at the cost price precisely as in the present instance. The white and colored wool are invariably sold together and for the same price.

One of the importers testifies:

"The owner of a lot will say 'here is my lot, this is my price.' We take it, we pack it as far as possible, so called white and so called colored separately. We sell the wool in this country. It contains maybe 30 per cent. of gray, from 10 or 5 per cent. We can never separate them; we take one fleece, for instance, you will see on one side it looks all white, and turn it and find it is black or some other color; it is the character of the wool that they never come absolutely white; there is always mixed colors, part of the sheep fleece may be white, might have a black mark on it, or near the skirt may be yellow or brown. * * * We buy them at one price. If I were to invoice it at any different prices I would not know what price to invoice one from the others. * * * There is no distinction. We have to pay the same price whether it is white or colored."

The testimony establishes overwhelmingly, and without contradiction, that in the Bagdad market from time immemorial, the white and colored wools have been sold together and always at the same price. Even when a partial separation was made the price was the same for the white as for the colored wool. There is no such thing as a strictly white wool coming from the Bagdad markets. Wools called white by manufacturers and dealers are not white. There is no difference in quality between the so-called white and the so-called colored wools.

The local appraiser, without altering the total invoice value, reduced the value of the colored wool to about nine cents per pound and added the amount so deducted to the white wool, making the value above twelve cents per pound, and thus subject to the high duty of paragraph 359.

The action of the local appraiser was sustained on reappraisement. The Board of General Appraisers overruled the protests and its decision was affirmed by the Circuit Court.

We are of the opinion that the protests should have been sustained. When the merchandise arrived at the port of New York the duty of the collector was plain. Having ascertained that it was wool imported from Bagdad he had only to ascertain its market value, not at New York or London or Marseilles, but at Bagdad, add thereto the packing charges, and his duty was done.

If the value of imported wool is to be ascertained by proof addressed to each separate importation a cumbersome, unworkable system will result which will open the door to uncertainty and fraud.

In order that the collector may have an infallible standard by which to measure value Congress enacted (section 19 of the customs administrative act) that duty shall be assessed upon the actual market value of the merchandise as bought and sold in usual wholesale quantities in the principal markets of the country from whence imported.

The rule thus fixed by statute is plain and simple; binding alike on importer and collector. Neither may vary or evade it. Neither may appeal to other criteria of value.

If the rule had been followed in the present case the value of appellants' wool would inevitably have been fixed at less than twelve cents per pound. By discarding the rule, and substituting argument and conjecture, a conclusion is reached which fixes the value of four-fifths of the importation at thirteen cents per pound and one-fifth at nine cents per pound. And yet if the record contains a syllable of proof that any of this wool, or similar wool, was ever bought and sold in Bagdad for thirteen cents or nine cents per pound, or that such difference in value as this can exist in the same lot of wool, we have failed to discover it.

The argument of the appellee rests, we think, upon the initial fallacy that the white wool was worth more in the markets of Bagdad than the colored wool.

The proof shows that it was not worth more and a finding to the contrary must either be wholly arbitrary or based upon facts which the statute excludes from consideration, viz., value in this country. The value of the wool here or in foreign countries, other than Turkey, the use to which the wool was to be put, the object of the purchaser in separating it, are all, in our judgment, matters extraneous to the issue.

By the express command of the statute the collector was prohibited from considering anything but the actual market value of the wool in the principal markets of Turkey. Having ascertained that value he should have levied duty accordingly.

The proof establishes beyond contradiction or doubt that the value of the wool at Bagdad was less than twelve cents per pound and it should have been so fixed.

The decision is reversed.