GRUBNAU v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. February 10, 1910.)

No. 69 (1,975).

CUSTOMS DUTIES (§ 85*)—REAPPRAISEMENT—REVIEWABILITY—"FINAL AND CONCLUSIVE."

Under Customs Administrative Act June 10, 1890, c. 407, § 13, 26 Stat. 136 (U. S. Comp. St. 1901, p. 1932), providing that decisions by the Board of General Appraisers in reappraisement cases shall be "final and conclusive," it was clearly intended that such decisions shall not be open to judicial review, except to inquire whether the appraisers have exceeded the authority conferred upon them by law or have otherwise acted illegally or fraudulently; and where there was no charge that the Board of Appraisers had acted illegally in denying the importers a hearing and opportunity to produce testimony in the matter, and there was some evidence to support the Board's conclusions as to value, its reappraisement was conclusive under said section.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 85.*

For other definitions, see Words and Phrases, vol. 3, pp. 2772, 2773.]

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

For decision below, see 171 Fed. 284, affirming a decision by the Board of United States General Appraisers, which had affirmed the assessment of duty by the collector of customs at the port of Philadelphia on merchandise imported by Carl Grubnau.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Currie, Smith & Maxwell and Francis Fisher Kane (W. Wickham Smith, of counsel), for importer.

D. Frank Lloyd, Deputy Asst. Atty. Gen. (Jasper Yeates Brinton, Asst. U. S. Atty., of counsel, and J. Whitaker Thompson, U. S. Atty., on the brief), for the United States.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

GRAY, Circuit Judge. This is an appeal from the decision of the United States Circuit Court for the Eastern District of Pennsylvania, affirming a decision of the Board of General Appraisers, which sustained the action of the collector in regard to an appraisement at the port of Philadelphia. The material facts with reference to the appraisement referred to are set forth in the stipulation of counsel, filed with the Board of General Appraisers, as follows:

It is hereby agreed that the merchandise covered by the above protest consists of washed Smyrna wool, embraced in two invoices; that these invoices cover certain bales of white wool, other bales of black wool, and other bales of gray wool, all invoiced at a round price; that on appraisement before the local appraiser at Philadelphia the appraiser found a separate value for the white wool and made certain additions to make the foreign market value of such white wool, which made it worth over 12 cents per pound; and he appraised the black and gray wools as valued at under 12 cents per pound; that thereafter the importer called for reappraisement of said white wool by single United States General Appraiser pursuant to section 13 of the act of June 10, 1890 (26 Stat. 136, c. 407 [U. S. Comp. St. 1901, p. 1932]), and said General Appraiser affirmed the appraisement as made by the local appraiser; that said importer called for further reappraisement of said white wool by a board of three General Appraisers, pursuant to said section 13 of the act of June 10, 1890, and said board of three General Appraisers affirmed the values already found for said white wool.

The protest of the importer challenges the legality of the action of the General Appraiser, charging that he had improperly found a separate value for white wool, apart from the colored wool, and that the merchandise having been invoiced at a round sum the same should have been accepted by the collector, on the ground that, with respect to the merchandise in question, there is no separate market for the white and for the colored wools. The testimony of the importer and of one other in the same business was to the effect that wool was bought in Smyrna at first hand from the producer, in lump lots, in which white, gray and black wool were mixed, and that, according to custom, the importer's agent had separated the white wool from the colored wools, baled and invoiced them separately, but at the round price actually paid for the unassorted lot. There was also testimony on the part of the government to show that white wool had a separate market value in Smyrna, although the usual mode of buying these wools in one lot, separating them, and exporting them in separate bales, was as stated by the importer. The round price of the wool as bought, including the white wool and the colored wool, was less than 12 cents a pound, and at that price would have been liable, under paragraph 358 of the tariff law, to a duty of 4 cents per pound. The appraisers, however, made a separate appraisement of the invoice of white wool at over 12 cents per pound, thereby sub-

jecting it, under paragraph 359 of the tariff law, to a duty of 7 cents per pound.

The Board of General Appraisers affirmed these preceding appraisements, and from their action the importer took an appeal to the court below, who affirmed the action of said Board.

Section 19 of the customs administrative act (Act June 10, 1890, c. 407, 26 Stat. 139 [U. S. Comp. St. 1901, p. 1924]) provides as follows:

Sec. 19. [Ad Valorem Duties, How Assessed—"Value," "Actual Market Value," Defined.] That whenever imported merchandise is subject to an ad valorem rate of duty, or to a duty based upon or regulated in any manner by the value thereof, the duty shall be assessed upon the actual market value or wholesale price of such merchandise as bought and sold in usual wholesale quantities, at the time of exportation to the United States, in the principal markets of the country from whence imported, and in the condition in which such merchandise is there bought and sold for exportation to the United States, or consigned to the United States for sale. ⁕ ⁕ ⁕

The appellant's contention is that the appraisers ignored and failed to act upon this plain standard of valuation, as prescribed by the customs law, and that therefore a question of law is raised touching the power of the appraisers and the legality of their action.

Section 13 of the same act provides that the appraisement of the different appraisers of the value of imported merchandise shall be final and conclusive, until a reappraisement is asked for, either by the importer or the government, in the manner prescribed by the statute, and that the last appraisement by the Board of General Appraisers, when their jurisdiction has been invoked, "shall be final and conclusive as to the dutiable value of such merchandise against all parties interested therein." This express provision of the statute would seem to make clear the intention of the legislative department of the government, that, after providing for appeals to successive appraisers and boards of appraisers, who are supposed to be experts as to the duties imposed upon them, there shall be an end of controversy when their decision is finally made, and that such decision is not to be open to review in a judicial court, except to inquire whether said appraisers have exceeded the authority conferred upon them by law or have otherwise acted illegally or fraudulently.

The Supreme Court in Hilton v. Merritt, 110 U. S. 97, 3 Sup. Ct. 548, 28 L. Ed. 83, prior to the enactment of the customs administrative act, after reviewing the various provisions of the Revised Statutes establishing the system of appraisement of merchandise, said:

These provisions of the statute law show with what care Congress has provided for the fair appraisement of imported merchandise subject to duty, and they show also the intention of Congress to make the appraisal final and conclusive. When the value of the merchandise is ascertained by the officer appointed by law and the statutory provisions for appeal have been exhausted, the statute declares that the appraisement thus determined shall be final and deemed to be the true value, and the duty shall be levied thereon accordingly. This language would seem to leave no room for doubt of construction. ⁕ ⁕ ⁕ We are of opinion, therefore, that the valuation made by the customs officers was not open to question in an action at law, as long as the officers acted without fraud and within the power conferred on them by the statute.

The Board of Appraisers in the case before us acted within its jurisdiction as conferred by law, and there is no charge that it acted

illegally in denying to the appellant a hearing and opportunity to introduce testimony bearing upon the question they had to decide. The record discloses the fact that there was some evidence as to a market value for white wool in Smyrna, the place from which the importation was made; and in this respect the case differs from the case of Gulbenkian & Co. v. United States (decided in the Second circuit) 153 Fed. 858, 83 C. C. A. 40, where the court expressly find that there was not a scintilla of evidence as to the market value of white wool at Bagdad separate and apart from its value in the lump when mixed with colored wools.

The judgment of the court below is therefore affirmed.