GULBENKIAN et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit.    March 13, 1911.)

No. 161.

CUSTOMS DUTIES (§ 79*)—RECOVERY OF DUTIES—STATUTORY REMEDY.

Under Customs Administrative Act June 10, 1890, c. 407, § 19, 26 Stat. 139, containing a system for the correction of errors in the exaction of import duties, and providing that, when the duty on imported merchandise is based on the value thereof, the duty shall be assessed on the actual market value or wholesale price in the principal markets of the country from whence imported, an importer of wool subject to a duty under Tariff Act July 24, 1897, c. 11, § 1, schedule K, 30 Stat. 182 (U. S. Comp. St. 1901, p. 1664), dividing wool into classes, and fixing a duty based on valuation, must conform to the statutory method, on the appraiser increasing the valuation over the amount stated in the invoice, and thereby subjecting the importer to a higher duty; and where he fails to take the requisite steps to secure a correction of the errors, if any, the decisions of the appraiser and collector as to value, classification, rate, and amount are final, and the importer may not recover excessive duties paid.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. § 195; Dec. Dig. § 79.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the Circuit Court of the United States for the Southern District of New York.

Action by Gullabi Gulbenkian and another against the United States to recover excessive import duties paid. There was a judgment of the Circuit Court (175 Fed. 860), dismissing the complaint, after trial before the court without a jury, and plaintiffs bring error. Affirmed.

Hatch & Clute (Walter F. Welch and Edward S. Hatch, of counsel), for plaintiffs in error.

Henry A. Wise, U. S. Atty. (W. S. Wemple, Asst. U. S. Atty., and John N. Boyle, of counsel), for the United States.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The action was brought to recover $8,-755, for excess of duties paid on certain wools imported into the port of Boston between November 2, 1903, and March 4, 1904. It will not be necessary to pass upon the question whether or not such action may be brought under Tucker Act March 3, 1887, c. 359, 24 Stat. 505 (U. S. Comp. St. 1901, p. 752), or whether the facts shown make out a case of duress. The language of Customs Administrative Act June 10, 1890, c. 407, 26 Stat. 131 (U. S. Comp. St. 1901, p. 1886), is so plain that a brief statement of what took place will indicate the proper disposition of this appeal.

Under Tariff Act July 24, 1897, c. 11, § 1, schedule K, 30 Stat. 182 (U. S. Comp. St. 1901, p. 1664), wool is divided into different classes. Class 3 is defined in paragraph 351, and plaintiffs' wools were of that class. On wools of this class, the value whereof is 12 cents or less per pound, duty was fixed at 4 cents per pound (paragraph 358); if the value exceeds 12 cents, the duty was fixed at 7 cents per pound (paragraph 359). It is apparent that, although no ad valorem duty was imposed, it was necessary to determine the value in order to enable the collector to make a proper classification for duty. Customs Administrative Act, § 19, provides:

"That whenever imported merchandise is subject to an ad valorem rate of duty, or to a duty based upon or regulated in any manner by the value thereof, the duty shall be assessed upon the actual market value or wholesale price of such merchandise as bought and sold in usual wholesale quantities, * * * in the principal markets of the country from whence imported, and in the condition in which such merchandise is there bought and sold for exportation to the United States."

Upon a prior importation to the port of New York the appraiser raised the value of part of the wool from the amount stated in the invoice, which was less than 12 cents per pound, to an amount in excess of that value, and in consequence increased duty was assessed and paid. Having taken the various steps required by the customs administrative act, the importers brought that case before the Circuit Court, and eventually before this court. We held that the increase of the valuation was not warranted by the facts, reversing the Board of General Appraisers and the Circuit Court. 153 Fed. 858, 83 C. C. A. 40.

A similar increase of valuation was made on the importations which are the subject of this case. What the plaintiffs then did is thus stated in their brief:

"When the full board of three (General Appraisers) decided against them, their Boston representative went to the appraiser and the collector's office at Boston and stated that they had nothing else to do now but to raise their invoices to conform with the board's reappraisement decisions, and they accordingly made up their entries in conformity therewith, to avoid any further penalties, and to get their goods and save them from general order expenses and procure their delivery. * * * In altering their invoices to conform, * * * they were compelled to pay additional duties, for which this proceeding is brought to recover."

Since it was subsequently held by this court (Gulbenkian v. U. S., supra) that the action of the appraiser in theoretically distributing the wool at Bagdad into "white" and "colored" was arbitrary, and not warranted by the law or the facts, and since the same improper method of appraisement was followed in Boston, plaintiffs contend that their payment of additional duties was under duress and involuntary, and that "the money in equity and good conscience belongs to these claimants, and that the court should accordingly imply a promise to repay the same on the part of the United States."

The difficulty with this proposition is that it wholly ignores the provisions of the customs administrative act by which Congress has enacted a system whereby errors and mistakes of the customs officers can be corrected, and duties improperly exacted from the importer can be recovered. Section 13 provides that, if the importer is dissatisfied with an appraisement, he may within two days give notice in writing to the collector, who shall at once direct a reappraisement by one of the General Appraisers. The decision of the appraiser or of the General Appraiser in cases of reappraisement *shall be final and conclusive* as to dutiable value, unless the importer shall within two days give notice in writing to the collector, who shall thereupon transmit the invoice and all the papers to the Board of General Appraisers and their conclusion as to dutiable value shall be final and conclusive. Section 14 provides that the decision of the collector as to the rate and amount of duties (which necessarily involves classification) *shall be final and conclusive* unless written notice of dissatisfaction is given within ten days. This notice sends the case to the Board of General Appraisers, and section 15 provides for a review of their decision in the court, and that all final judgments, when in favor of the importer, shall be paid by the Secretary of the Treasury.

This system of corrective justice is complete in itself. In the case of the New York importations the present plaintiffs conformed to it and obtained relief. It must be concluded that Congress did not intend to allow any other mode to redress a supposed wrong in the operation of the laws for the correction of duties on imported merchandise. Nichols v. U. S., 7 Wall. 122, 19 L. Ed. 125.

The authorities cited by plaintiffs do not sustain their contention. In Swift v. U. S., 111 U. S. 22, 4 Sup. Ct. 244, 28 L. Ed. 341, the court is careful to point out that:

"No formal protest made at the time is by statute a condition to the present right of action, as in cases of action against the collector to recover back taxes illegally exacted."

In Re Fassett, 142 U. S. 479, 12 Sup. Ct. 295, 35 L. Ed. 1087, the question was not whether excessive duties had been collected on imported merchandise, but whether the seagoing steamship was "imported merchandise." In Dooley v. U. S., 182 U. S. 222, 21 Sup. Ct. 762, 45 L. Ed. 1074, decided at the same time with De Lima v. Bidwell, 182 U. S. 1, 21 Sup. Ct. 743, 45 L. Ed. 1041, the goods were brought either from Porto Rico to the United States or vice versa. The court held that duties upon such goods exacted by a collector were impositions "upon goods which were not imported at all," and therefore not within the purview of the customs administrative act, but also held that:

"As applied to customs cases this remedy [customs administrative act] is doubtless conclusive."

Inasmuch as plaintiffs failed to take the requisite steps to secure a correction of the errors of appraiser and collector in the case of their Boston importations, the decisions of those officers as to value, classification, rate, and amount must stand as final and conclusive as far as those importations are concerned.

Judgment affirmed.