STAHEL & Co. v. UNITED STATES (No. 2191).[1]

APPRAISEMENT, REVIEW OF.

It is clearly established that a reappraisement by a board of three general appraisers can not be disturbed unless it plainly appears that the board was without jurisdiction, or that its action proceeded upon a wrong principle of law, or was fraudulent. Where the examiner had reported an advance of 42 per cent in the foreign market value of the goods and testified before the reappraisement board to an advance of only 33⅓ per cent, the decision of the board affirming an appraisement at a 42 per cent advance was a ruling on the weight of the evidence, and is not reviewable. .

United States Court of Customs Appeals, January 22, 1923.

APPEAL from Board of United States General Appraisers, Abstract 45090.

[Affirmed.]

*Walter Evans Hampton* for appellants.
*William W. Hoppin*, Assistant Attorney General (*Marcus Higginbotham, jr.*, special attorney, of counsel), for the United States.

[Oral argument November 23, 1922, by Mr. Hampton and Mr. Hoppin.]

Before SMITH, BARBER, and MARTIN, Associate Judges.

. MARTIN, Presiding Judge, delivered the opinion of the court:

The merchandise involved in this case consists of certain bales of shrunk linen duck, plain woven, which were imported from Belfast, arriving in this country in the month of April, 1920.

The consular invoices declared that the goods had been purchased in the foreign market at the price of 16 pence per yard, less a discount of 2½ per cent; and they were entered for duty at that valuation.

The examiner, however, reported that the foreign market value of the goods was 23 pence per yard, less a discount of 3½ per cent; and a notation to that effect was written upon the face of each invoice. The appraiser appraised the merchandise at the same valuation as that reported by the examiner, this being an advance of approximately 42 per cent over the invoiced and entered value thereof.

The importers then appealed for a reappraisement of the merchandise by a single general appraiser. A hearing was had upon the appeal, and the testimony of two witnesses was taken and incorporated in the record. Upon consideration, the single general appraiser affirmed the valuation which was found by the local appraiser. The importers next appealed for a reappraisement by a board of three general appraisers, and a hearing was accordingly had. Testimony was submitted by the importers before the board in behalf of their claim, all of which is contained in the record. The three general appraisers, however, likewise affirmed the valuation found by the local appraiser.

[1] T. D. 39435.

The collector thereupon assessed duty upon the merchandise at a concededly correct ad valorem rate of duty, at the advanced valuation thus found, and at the same time assessed so-called additional duties thereon under paragraph I, Section III, of the tariff act of 1913.

The importers protested against the assessment of duty upon the excess valuation thus established over that stated in the invoice and entry, and also against the imposition of the so-called additional duties. The protest was submitted to the classification board upon proof of the record of the appraisement proceedings above recited. The board overruled the protest, and the importers appealed.

The foregoing statement discloses that the sole question now before us is whether the importers are entitled upon the record to have the appraisement of the merchandise set aside in whole or in part, with the result of relieving them wholly or partly from the duties exacted because of the advance in the valuation of the merchandise.

The following quotations, which serve to define and explain the legal limitations of such an inquiry, are presented at this point:

SEC. 2940. The Secretary of the Treasury may, on the nomination of the appraiser, appoint such number of examiners at the port of New York as the Secretary may in writing determine to be necessary, to aid each of the assistant appraisers in the examination, inspection, and appraisement of merchandise. (U. S. Revised Statutes, 1878.)

ART. 1124. *Examiners.*—It is the duty of the examiners, under the supervision and direction of the appraiser and assistant appraiser, to examine imported merchandise designated by the collector for examination, to check the same with the invoices therefor, and to ascertain and report the foreign market value thereof as defined by law, and in their return to so describe the merchandise that the rate of duty chargeable thereon may be determined by the collector. (Customs Regulations, 1915.)

That it shall be the duty of the appraiser of the United States, and every of them, and every person who shall act as such appraiser, or of the collector, as the case may be, by all reasonable ways and means in his or their power to ascertain, estimate, and appraise (any invoice or affidavit thereto or statement of cost, or of cost of production to the contrary notwithstanding) the actual market value and wholesale price of the merchandise at the time of exportation to the United States, in the principal markets of the country whence the same has been imported, and the number of yards, parcels, or quantities, and actual market value or wholesale price of every of them, as the case may require. Paragraph K, Section III, tariff act of 1913.

* * * and if the appraised value of any article of imported merchandise subject to an ad valorem duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the value declared in the entry, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of 1 per centum of the total appraised value thereof for each 1 per centum that such appraised value exceeds the value declared in the entry: * * *. Paragraph I, Section III, tariff act of 1913.

The decision of the appraiser, or the person acting as such (in case where no objection is made thereto, either by the collector or by the importer, owner, consignee, or agent), or the single general appraiser in case of no appeal, or of the board of three general appraisers, in all reappraisement cases, shall be final and conclusive against

all parties and shall not be subject to review in any manner for any cause in any tribunal or court, and the colléctor or the person acting as such shall ascertain, fix, and liquidate the rate and amount of the duties to be paid on such merchandise, and the dutiable costs and charges thereon, according to law; * * *. Paragraph M, Section III, tariff act of 1913.

Under customs administrative act June 10, 1890, c. 407, §13, 26 Stat. 136 (U. S. Comp. St. 1901, p. 1932), providing that decisions by the Board of General Appraisers in reappraisement cases shall be "final and conclusive," it was clearly intended that such decisions shall not be open to judicial review, except to inquire whether the appraisers have exceeded the authority conferred upon them by law or have otherwise acted illegally or fraudulently; and where there was no charge that the Board of Appraisers had acted illegally in denying the importers a hearing and opportunity to produce testimony in the matter, and there was some evidence to support the board's conclusions as to value, its reappraisement was conclusive under said section. Grubnau v. United States, Circuit Court of Appeals, Third Circuit, 176 Fed. 904.

See also Wolff v. United States (1 Ct. Cust. Appls. 181; T. D. 31217); Oelrichs v. United States (2 id. 335; T. D. 32091); Harris v. United States (3 id. 5; T. D. 32286); Horace Day Co. v. United States (3 id. 152; T. D. 32456); United States v. Bradshaw & Co. (5 id. 121; T. D. 34168); United States v. Johnson Co. (7 id. 466; T. D. 37050); United States v. Johnson & Co. (9 id. 258; T. D. 38215); and cases therein cited.

According to the procedure thus established it became the duty of the local appraiser to make the first official appraisement of the imported merchandise. When performing that duty he had samples of the merchandise before him; he was also entitled to consider the examiner's report upon the market value thereof, and likewise any other information upon that subject which he might possess or acquire. And in the search for such information he was not bound by the legal rules which govern the introduction of evidence in court proceedings, nor did the examiner's report preclude such an inquiry, for it was not conclusive upon the appraiser, but advisory only. Accordingly the appraisement when made herein was the official action of the appraiser alone.

At the trial before the single general appraiser upon the appeal for reappraisement, two witnesses testified. One of these was the purchasing agent of the importers who testified in effect that the invoices correctly stated the prices which were actually paid for the merchandise when ordered, and that he knew of no advance in the market value thereof between the date of the order and that of the importation. The other witness was the examiner who had reported to the appraiser upon the merchandise when imported. He testified that the foreign market value of the merchandise had actually advanced 33⅓ per cent between the date of its purchase and that of its importation. Since the testimony of this witness furnished the importers with their chief argument upon this appeal, the following extracts from it are quoted at this point:

Q. Mr. Tracey, did you as examiner at this port make the advances on the invoices covering merchandise here under consideration this morning?　A. Yes, sir.

Q. Are you familiar with the market value and wholesale price of this merchandise in Belfast, Ireland, during the months of February and March, 1920?　A. Yes, sir.

Q. And during the month of September, 1919?　A. Yes, sir.

Q. Do you know how the market price of February and March of this year compared with that of September of last year?　A. There was an increase of 33⅓ per cent between February and September.

Q. How did March compare with September?　A. About the same price.

Q. What was the basis of your advance?　A. Shipment of comparable merchandise.

Q. To other houses here?　A. Other houses here.

　　*　　　　*　　　　*　　　　*　　　　*　　　　*　　　　*

Q. The only way you are familiar with this market value is through the transactions that come before you in the customs business?　A. And through physical examination of merchandise.

Q. You do not know the manner of selling this particular merchandise in Belfast, Ireland, at the times mentioned?　A. Yes, I am in touch all the time. I have information from abroad and I get in touch with manufacturers here.

Q. Manufacturers here are doing American business.　A. Yes, sir.

Q. But in so far as transactions in the British Isles or Ireland are concerned you have no personal contact with them?　A. No, not in Ireland.

Q. All you know is what people tell you.　A. I have the actual shipments of the merchandise and physical examination of merchandise.

Q. From Ireland to the United States?　A. Yes, sir.

Q. But you do not know anything about sales or business transactions of wholesale quantities in Belfast for home consumption in March, 1920?　A. Yes, in this way, that I get price lists of various classes of merchandise, similar merchandise, and that is the prices they are getting in the home market regardless of whether it is for exportation or home consumption.

As already stated the general appraiser affirmed the valuation found by the local appraiser, and an appeal was taken by the importers to a board of three, acting in reappraisement.

At the trial before the reappraising board the importers introduced evidence tending to prove that the goods now in question had been purchased by them from samples, and that the invoice prices were agreed upon accordingly; but that when they arrived in this country they were found to be inferior to the samples, and worth much less than their invoice prices; and that the alleged advance in the foreign market value of the goods had no other effect than to bring the market value of such inferior goods up to the prices declared in the invoice and entry. Samples of the merchandise were submitted in support of this claim. Also the testimony of the examiner, above copied, was read to the board from the record and placed in evidence.

No other testimony of any kind was submitted to the reappraising board; and the board thereupon affirmed the valuation found by the local appraiser and the single general appraiser. And that was the decision which became the subject of the importers' protest and of this appeal.

We think that the action of the classification board in overruling the protest was fully justified by the record. The appraisement of the local appraiser when before the reappraising board was presumed to be correct both in law and fact, and the burden of disproving it was cast upon the importers. But, as already stated, the only proofs offered by them were of two kinds. The first related to the inferior quality of the imported goods, as compared with the samples from which they were priced and purchased. The second was the testimony of the examiner to the effect that the foreign market value of the goods had advanced 33⅓ per cent between the date of their purchase and that of their importation. It will be remembered that the same examiner had advised an advance of 42 per cent over the invoiced and entered value, and that the official appraisement accorded therewith. It is especially insisted by the importers that the testimony of the examiner is conclusive in their favor, since in his testimony he gives 33⅓ per cent, and not 42 per cent, as the measure of the advance. The importers contend that the testimony leaves the advance of 42 per cent without any support, and stamps it as arbitrary and illegal.

It is apparent, however, that the testimony thus relied upon related to questions of fact only, such as required a decision by the board upon the weight of the evidence and no more. And decisions of a reappraising board upon all such questions are final and conclusive. The board in effect held that the foregoing testimony in relation to the quality of the imported goods was indefinite and unsatisfactory and that the testimony of the examiner, while inferentially sustaining an advance of 33⅓ per cent only, was impeached, or at least contradicted, by his official report in favor of an advance of 42 per cent; and that accordingly the probative value of the testimony in each particular was insufficient to outweigh and overcome the presumption of correctness both in law and in fact which attended upon the official appraisement in question. In this connection also the board no doubt considered the evidentiary fact that the importers had brought no testimony before them relating directly to the actual foreign market value of the merchandise at the times in question. We are not, however, called upon to express an opinion concerning the correctness of these rulings of the board upon the weight of the evidence, since that issue can not be raised by a protest to the classification board, nor be reviewed by this court upon appeal. This principle is clearly established by the authorities first above cited, which hold than an official reappraisement like this can not be disturbed unless it plainly appears that the reappraising board was without jurisdiction, or that its action proceeded upon a wrong principle of law, or was fraudulent; and that questions relating only to the probative

value of the evidence in such cases are concluded by the board's decision.

In the absence of fraud it is not competent to inquire whether the board has followed or disregarded the evidence so far as the question of value is concerned, or whether it has received incompetent evidence, or rejected evidence that was competent, or to inquire how the various elements impressed the board, or what grounds influenced or controlled the mental processes of the members thereof. Horace Day Co. *v.* United States, supra.

Accordingly we *affirm* the decision of the board.