UNITED STATES *v.* MANAHAN CHEMICAL CO., INC. (No. 3935)[1]

[1] T. D. 48333.

54

United States Court of Customs and Patent Appeals, May 4, 1936

*Joseph R. Jackson*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *Joseph F. Donohue*, special attorney, of counsel), for the United States.

*Brown & Carter* (*Allan R. Brown* and *Fred J. Carter* of counsel) for appellee.

[Oral argument April 9, 1936, by Mr. Lawrence and Mr. Brown]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment rendered by the United States Customs Court, Third Division, in reappraisement proceedings. The merchandise involved is ammonium sulphate imported from Germany at the port of New York in seven shipments, extending from October 21, 1931, to September 6, 1932; separate entries were made thereon.

On August 13, 1932, the Secretary of the Treasury issued an antidumping order, T. D. 45849, pursuant to the provisions of section 201 of the Antidumping Act, 1921, relating to the importation of ammonium sulphate from Germany.

Appraisement of the involved merchandise was withheld after entry, and the same was not appraised until after the issuance of said antidumping order.

The merchandise, under the Tariff Act of 1930, is free of duty.

Sections 209 and 210 of said Antidumping Act, 1921, read as follows:

DUTIES OF APPRAISERS

SEC. 209. That in the case of all imported merchandise, whether dutiable or free of duty, of a class or kind as to which the Secretary has made public a finding

as provided in section 201, and as to which the appraiser or person acting as appraiser has made no appraisement report to the collector before such finding has been so made public, it shall be the duty of each appraiser or person acting as appraiser by all reasonable ways and means to ascertain, estimate, and appraise (any invoice or affidavit thereto or statement of cost of production to the contrary notwithstanding) and report to the collector the foreign market value or the cost of production, as the case may be, the purchase price, and the exporter's sales price, and any other facts which the Secretary may deem necessary for the purposes of this title.

APPEALS AND PROTESTS

SEC. 210. That for the purposes of this title the determination of the appraiser or person acting as appraiser as to the foreign market value or the cost of production, as the case may be, the purchase price, and the exporter's sales price, and the action of the collector in assessing special dumping duty, shall have the same force and effect and be subject to the same right of appeal and protest, under the same conditions and subject to the same limitations; and the general appraisers, the Board of General Appraisers [now the United States Customs Court], and the Court of Customs Appeals [now the United States Court of Customs and Patent Appeals] shall have the same jurisdiction, powers, and duties in connection with such appeals and protests as in the case of appeals and protests relating to customs duties under existing law.

The appraiser advanced the total value of the merchandise stated in each entry in his appraisement made pursuant to section 209 of said Antidumping Act, 1921, and appellee appealed to reappraisement with respect to the appraisement in each of the seven entries.

The relevant facts in each of the reappraisements are the same, except as to the quantities and values shown in the invoices, and reappraisement 103725–A is illustrative of all the reappraisements before us.

In that reappraisement 15,000 kilos of ammonium sulphate, gross weight, were invoiced and entered at $28.50 per thousand kilos. The following appraisement report was made under said antidumping act:

APPRAISEMENT REPORT UNDER ANTIDUMPING ACT 1921

Finding of Secretary dated Aug. 13/1932 T. D. 45849 applies

The importer of this merchandise $\frac{\text{an importer}}{\text{an exporter}}$ under the law.

Foreign market value on date of purchase _____ $471.78 _____
Purchase price (Section 203) _____ $351.19 _____
Foreign market value on date of exportation _____ $485.21 _____
Exporters' sales price (Sec. 204) $ _____
Cost of production _____
Entry Number—325071   10/17/31
                    Appraised value, $471.78
                    Dumping duty     120.59

The foregoing is a typewritten or mimeographed form, and the underlined portions in the body of the report represent blanks in said form. All dates, figures, and prices appearing in these under-

lined portions, together with all the matter following the words "Cost of production", have been inserted in longhand. The report is upon a regular form provided for by article 796, Customs Regulations of 1931, for appraisement reports under said antidumping act. All of the longhand matter referred to is in red ink, except the items of appraised value and dumping duty, which are in black ink.

Appellee appealed to reappraisement in each of said cases, and all of said reappraisement appeals were consolidated for the purpose of trial. Appellee offered no testimony, but introduced in evidence each of the antidumping appraisement reports, numbered Exhibits A, B, C, D, E, F, and G, respectively.

The Government introduced the testimony of one Henry Rosenthal, a customs examiner who examined the merchandise here involved. By him the Government sought to prove the basis of the appraisements. The trial court sustained objections to questions directed to such testimony, to which rulings exceptions were duly taken.

The trial judge held that the appraisements under said antidumping act were void, and that the purchase price, the foreign-market value of the merchandise on the date of purchase, and the foreign-market value on the date of exportation, were each equal in amount to the entered value. Judgment was entered accordingly. Upon application for review of this judgment and decision, the Third Division affirmed the judgment appealed from, and from this judgment of the Third Division the Government appealed to this court.

Before this appeal was reached for argument, appellee moved to dismiss the appeal on the ground that this court had no jurisdiction to dispose of the issues presented by such appeal.

The appellee contended that, inasmuch as said section 210 of the antidumping act provides that appeal may be taken "under existing law", and the tariff act of 1913 was in full force and effect at the time of the enactment of said antidumping act, which tariff act of 1913 did not provide for an appeal to this court from a decision of the Board of General Appraisers (now the United States Customs Court) in reappraisement cases, we were without jurisdiction to entertain the appeal herein.

We held that the words "existing law" in said section 210 of the antidumping act referred to the law in force at the time of the importation of the merchandise subject to the provisions of the antidumping act, and therefore denied appellee's motion to dismiss. *United States* v. *Manahan Chemical Co., Inc.*, 23 C. C. P. A. (Customs) 332, T. D. 48195.

One of the principal questions before us is concisely stated in the brief of the Government as follows: ·

\* \* \* In finding a value for the purpose of assessing a dumping duty on merchandise otherwise entitled to free entry under the Tariff Act of 1930 is the

appraiser required by law to return a value based upon the *unit of quantity* in which the merchandise is usually bought and sold?

The Government contends first that, under said antidumping act, appraisement of merchandise in the unit of quantity in which it is usually bought and sold is not required; or, alternatively, if required, that there is nothing in the record to indicate that the merchandise here involved was not so appraised.

It will be remembered that the antidumping act was enacted in 1921; at that time the tariff act of 1913 was in effect. Paragraph K of section 3 of that act read as follows:

K. That it shall be the duty of the appraisers of the United States, and every of them, and every person who shall act as such appraiser, or of the collector, as the case may be, by all reasonable ways and means in his or their power to ascertain, estimate, and appraise (any invoice or affidavit thereto or statement of cost, or of cost of production to the contrary notwithstanding) the actual market value and wholesale price of the merchandise at the time of exportation to the United States, in the principal markets of the country whence the same has been imported, and the number of yards, parcels, or quantities, and actual market value or wholesale price of every of them, as the case may require.

It will be observed that the duties of the appraiser under the tariff act of 1913 were substantially the same, with some exceptions not material here, as are his duties under section 209 of the said antidumping act. Neither act specifies that merchandise shall be appraised in the unit of quantity in which the merchandise is usually bought and sold. Nevertheless this court held, in the case of *Igstaedter & Co.* v. *United States*, 11 Ct. Cust. Appls. 477, T. D. 39570, which case arose under said tariff act of 1913, that the "appraised value" of merchandise is the unit value. This court in its opinion stated:

In customs adjudication it is conclusively settled that the "appraised value" of merchandise is the *unit* value and not the total value of the importation. United States v. Kuttroff (9 Ct. Cust. Appls. 239; T. D. 38204); United States v. Bush & Co. (5 Ct. Cust. Appls. 127; T. D. 34187); Marriott v. Brune et al. (9 How. 50 U. S. 619); J. H. Rossbach & Bro. case, G. A. 5178 (T. D. 23871); Geo. S. Bush & Co. case, G. A. 6916 (T. D. 29876).

From the undisputed facts it appears that the appraiser approved of the unit value stated in the invoice on December 6, 1920. Any further appraisement by the appraiser was functus officio and null and void. * * *

Inasmuch as section 209 of the antidumping act is substantially the same as the quoted provisions of the act of 1913 respecting the duties of appraisers in appraising merchandise, we think the case last cited controls the construction of so much of said section 209 of the antidumping act as relates to the duties of appraisers in appraising merchandise, and we hold that it was the duty of the appraiser in the case at bar to appraise the merchandise in the unit of quantity in which it was usually bought and sold, and that any other manner of appraisal was erroneous.

In view of this holding it is unnecessary for us to pass upon the contention of appellee that the words "under existing law" in section 210 of the antidumping act relate back to the provisions of section 209 of said act, relating to the duties of appraisers, with the result that section 500 of the Tariff Act of 1930 is applicable, which section 500 expressly requires appraisements to be made in the unit of quantity in which the merchandise is usually bought and sold.

The Government further contends that there is nothing in the record to show that the appraisements here involved were not made in the unit of quantity in which the merchandise was usually bought and sold.

Appellee answers this contention by showing that the invoices show the purchase price by the thousand kilos, and the record shows that only three of the seven importations appraised, according to the consular invoices, were of the same quantity, namely, 15,200 kilos; of the other four, according to the consular invoices, no two were of the same quantity. We have in the record, therefore, consular invoices of five different quantities covering a period from October 7, 1931, to August 20, 1932. One of said invoices, dated February 9, 1932, shows the purchase of 15,200 kilos, while another, dated March 10, 1932, little more than a month later, shows the purchase of 16,100 kilos. Each of the appraisements shows only a total sum for all of the merchandise set forth in the invoice. We would further observe that each of the invoices shows the date of the acceptance of the order, which in each case was a few days prior to the date of the invoice.

In view of the foregoing, we do not feel warranted in holding that the total quantity named in each of said invoices was the unit of quantity in which the merchandise was usually bought and sold at the respective dates of purchase thereof.

The Government assigned error on the part of the division in not reversing the decision of the trial court because of its action in sustaining objections to questions propounded to one Rosenthal, a customs examiner who examined the involved merchandise, the answers to which questions, the Government contends, would have established that the merchandise was, in fact, appraised in the unit of quantity in which it was usually bought and sold.

Said Rosenthal testified that he examined the involved merchandise, but that the appraisements were not made by him; he testified that after examining the merchandise he recommended an appraisement to the appraiser; that after he, the witness, had acted, the papers went to the assistant appraiser, and he presumed that from the assistant appraiser the papers went to the appraiser for his approval; that he was not present when either the assistant appraiser or the appraiser acted in the matter.

In view of the fact that it was not the duty of the witness to appraise the merchandise, and that he had no authority to do so,

and in view of the further fact that he was not present when the appraisements were actually made by the duly constituted appraising authorities, we find that the objections above referred to were properly sustained by the trial court, and it is therefore unnecessary for us here to decide whether it would have been competent to establish by parol evidence that the appraisements here involved were in fact made in the usual units of quantity in which the merchandise was bought and sold.

We are constrained to hold that, upon the record before us, the appellate division correctly held that the appraisements here involved were made of the total quantities involved in each entry as a whole and not in the unit of quantity in which the merchandise was usually bought and sold; we therefore conclude that the said appraisements by the local appraiser were erroneous because of his failure to appraise in the unit of quantity as aforesaid.

The next question to be determined is whether the appellate division erred in holding that said appraisements were null and void.

We are here confronted with seemingly conflicting lines of decisions by this court. One line of decisions is referred to and discussed in our opinion in the case of *United States* v. *Tampa Box Co.*, 15 Ct. Cust. Appls. 360, T. D. 42561, from which opinion we quote:

Under earlier statutes in force the Supreme Court in United States v. Passavant, 169 U. S. 16, and in other cases therein referred to, held that an appraisement declared by statute to be final, or from or against which no appeal or protest had been provided for, was, nevertheless, *subject to be impeached in classification cases where the appraiser had proceeded on a wrong principle contrary to law*, or had transcended the powers conferred by statute.

This court has long followed the rule of that case. See *Stein* v. *United States*, 1 Ct. Cust. Appls. 36, T. D. 31007; *Stahel & Co.* v. *United States*, 11 Ct. Cust. Appls. 430, T. D. 39435, and cases therein cited. (Italics supplied.)

See also *Goodyear Tire & Rubber Co.* v. *United States*, 11 Ct. Cust. Appls. 351, T. D. 39158.

The other line of cases expressing the more recent views of this court is illustrated by the case of *United States* v. *F. W. Woolworth Co. et al.*, 22 C. C. P. A. (Customs) 184, T. D. 47126. In that case one of the questions involved was the authority of the appraiser, under the Tariff Act of 1930, to appraise the value of, or advance the cost of, cases and packing. The appellate division of the Customs Court directed the dismissal of the appeals to reappraisement for the reason that the appraisements were null and void. We held otherwise, stating in the opinion that it did not appear from the record that the appraiser had appraised the value of the packing and other miscellaneous charges, but that he advanced the cost thereof. The opinion states:

Under the Tariff Act of 1930 the value which the local appraiser found is made presumptively correct, but this presumption, like all other legal presumptions, is

just that and nothing more. *If the appraisement be defective for a purely legal* *reason*, or if the evidence shows errors of fact, or if there be errors of both law and fact, obviously it is the duty of the single judge so to declare. But this is only a part of the requirement of the statute. Appraisement lies at the very basis of customs administration, and surely it is the clear intent of Congress that an appraisement shall be had as speedily and with as little difficulty as may be possible.

Nothing practical is accomplished by simply upsetting the valuation of the local appraiser and stopping there. Certainly every intendment of the statute is to avoid any such *impasse*. Hence the requirement that the single judge shall determine value. As we view it, that is the fundamental object of the jurisdiction conferred by the statute.

There is no provision in the statute for the remand of an appraisement to the local appraiser by the single judge, or by the United States Customs Court, or by this court, nor do the decisions of the single judge, in form, reverse the findings of the local appraiser. The single judge simply proceeds to find value, and it is his decision which becomes the basis of all subsequent proceedings.

Proceeding from the function of the single judge to that of the United States Customs Court itself (or three judges thereof) it seems equally clear to us that that tribunal also is authorized and required, within certain limits, to find value.

\* \* \* We think that no case, in which appraisement is required and in which *the elements are present that enable appraisement*, should be left suspended in mid-air to the detriment, if not the complete paralysis, of administration. Accordingly we feel that in cases where the tribunals of the United States Customs Court, when functioning in reappraisement proceedings, find erroneous the valuation of the local appraiser, *they should themselves find value if the record warrants* *such a finding*. Their authority is ample, and, in our opinion, the duty so to do is mandatory. Unless it is done by them it cannot be done. This court is without the power which is theirs, and we know of no other tribunal to which those interested may turn. (Italics, except the word *"impasse,"* supplied.)

The opinion then proceeds to distinguish cases "in which appraisement is required and in which the elements are present that enable appraisement" from cases decided by this court where such elements were not present. The opinion cites, as illustrations of the latter character of cases, *United States* v. *Porto Rico Coal Co.*, 17 C. C. P. A. (Customs) 288, T. D. 43716, and *United States* v. *V. W. Davis, etc.*, 20 C. C. P. A. (Customs) 305, T. D. 46087, in which cases the appraisements made by the local appraiser were held to be null and void.

As in the case of *United States* v. *Woolworth & Co.*, *supra*, where all of the elements that enable appraisement were present, so in the case at bar all of the elements that enable appraisement were present, and the appraisements here involved were, to quote from the *Wool-* *worth* case, "defective for a purely legal reason;" therefore, in accordance with our holding in that case, the appraisements here involved should not be held to be null and void, but erroneous only, and the appeal to reappraisement required a trial *de novo* before the single judge upon the merits, and a finding of value of the merchandise involved.

We think it proper to observe that all of the cases which have been brought to our attention in which appraisements by the local ap-

praiser were held null and void, because the appraiser had proceeded upon a principle contrary to law, arose under tariff acts prior to the Tariff Act of 1922. In the latter act reappraisement proceedings were for the first time made purely judicial in their nature, and appeals to this court from decisions of the appellate division of the Customs Court in such proceedings were provided for. Inasmuch as the Tariff Act of 1930 is similar to the Tariff Act of 1922 in that respect, and either the importer or collector, being dissatisfied with the appraisement by the local appraiser, may appeal therefrom, secure a trial *de novo* before the trial court, and either party may secure a review of the decision of the trial court by the appellate division, and may take a further appeal to this court from the judgment of the appellate division upon questions of law, it appears to us that full opportunity is now given to secure a judicial determination of the value of all merchandise subject to appraisement in all cases where the elements essential to a valid appraisement were present before the local appraiser. Therefore, there would seem to be no occasion for the rather rigid rule, applied prior to the enactment of the Tariff Act of 1922, that appraisements should in all cases be held to be null and void where the local appraiser had proceeded upon a wrong theory of law.

The holding in the case of *United States* v. *Woolworth & Co., supra,* was expressly approved by us in the case of *United States* v. *Beermaker,* 23 C. C. P. A. (Customs) 48, T. D. 47714, and in view of what has been hereinbefore said with respect to complete judicial review in reappraisement proceedings being afforded by the later tariff acts, we adhere to the views expressed in the *Woolworth* case, *supra,* and hold that in all cases where merchandise is subject to appraisement, and all of the elements necessary to a valid appraisement are before the appraiser, his appraisement, if erroneous, should not be held to be null and void, and the reappraising tribunals should find the value of the merchandise whenever the record is sufficient to warrant such a finding.

In the case at bar the trial judge held the appraisements made by the local appraiser to be void, and also found the purchase price of the merchandise, its foreign-market value on the date of purchase, and the foreign-market value on the date of exportation were each equal in amount to the entered value. The appellate division affirmed that decision in its entirety.

We have already held that the appellate division erred in holding the appraisements made by the local appraiser to be void. The question remains whether there is any substantial evidence in the record to support the finding of the trial judge, affirmed by the appellate division, as to the foreign-market value of the merchandise.

As hereinbefore stated, the only evidence introduced by appellee was the appraisement reports under the antidumping act, and the Government offered no evidence upon the subject of the value of the merchandise.

Appellant's counsel contend that the prices stated in the invoices constitute substantial evidence as to the dutiable value of the merchandise. It is true that an invoice, under certain circumstances, may be considered in the appraisal of merchandise, but an invoice cannot of itself establish statutory elements necessary to constitute foreign or export value of merchandise.

In the case of *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 164, T. D. 45276, we said:

The court below is quite correct in the statement that as a matter of law a single sale might establish an export value. But, in order to do so, *it must appear from proof* that such a sale accords with a free offering at that price—

to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States * * *. (Italics supplied.)

There is nothing in the invoices or other papers constituting a part of the record indicating that the prices named in the invoices were the prices at which the merchandise was offered to all purchasers in the principal markets of Germany, either for home consumption in that country or for export to countries other than the United States. In other words, there is nothing in the record to indicate that the prices named in the invoices accord with a free offering of such or similar merchandise in the principal markets of Germany in the usual wholesale quantities and in the usual course of trade.

The appellate division of the Customs Court further took note of the fact that the papers in the file relating to the appraisements under the Tariff Act of 1930, as distinguished from the appraisements under the antidumping act, evidence that the appraiser found a different value in his appraisement under said tariff act. The court in its decision stated as follows:

* * * It is noted that the gross foreign-market value on the date of exportation in each report for dumping differs from the foreign-market value approved and appraised under the Tariff Act of 1930. Since both of these items relate to the same value on the same date, it is impossible to reconcile them. If the entered value was the correct value, as indicated by the appraiser, on his green slip report (the summary sheet), then his statement on his appraisement report for dumping, wherein he shows a different amount as the foreign-market value on the date of exportation, is not correct. Inasmuch as the Tariff Act of 1930 attaches a presumption of correctness to the appraiser's action in appraising under the said tariff act, we are compelled to accept those figures as the correct statement of the foreign-market value, in spite of the fact that the report under dumping carries a total which does not correspond to the total extension at the unit of value as appraised.

Assuming, without deciding, that it was proper to consider the appraisement of the involved merchandise under the Tariff Act of 1930, we call attention to the fact that the foreign-market values found under said act and those found under the antidumping act would not necessarily be the same. In the case at bar the foreign-market value under the antidumping act is the value at the date of the purchase of the merchandise, while under the Tariff Act of 1930, section 402 (c), such value must be found as of the date of the exportation of the merchandise, and it must be based upon the market value or price at which such or similar merchandise is freely offered to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade.

We have held that, under said section 402 (c), there must be taken into consideration all free offers of merchandise, whether for home consumption in the country of exportation or for exportation to countries other than the United States. *United States* v. *Livingston & Southard, Inc.*, 23 C. C. P. A. (Customs) 214, T. D. 48060.

Section 205 of said antidumping act, however, provides in part as follows:

FOREIGN MARKET VALUE

Sec. 205. That for the purposes of this title the foreign market value of imported merchandise shall be the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is sold or freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade for home consumption (or, if not so sold or offered for sale for home consumption, then for exportation to countries other than the United States), * * * except that in the case of merchandise purchased or agreed to be purchased by the person by whom or for whose account the merchandise is imported, prior to the time of exportation, the foreign market value shall be ascertained as of the date of such purchase or agreement to purchase. * * *

It will be noted that under said section 205 it is the duty of the appraiser to base his appraisement on the foreign-market value for home consumption, and he is authorized to consider sales or offers for sale for exportation to countries other than the United States only in the event that there is no basis for finding a foreign-market value for home consumption.

It follows necessarily that a foreign-market value of merchandise found under said section 205 of the antidumping act might properly be different from the foreign-market value found under section 402 (c) of the Tariff Act of 1930.

From all of the foregoing, we are constrained to hold that there is no substantial evidence in the record supporting the finding of the trial judge as to the foreign-market value of the involved merchandise, and the appellate division should have so found.

We think it proper to observe that, under appellee's theory of what constitutes evidence of foreign-market value, it would not be necessary for the importer to introduce any evidence whatever, but he could rely upon his invoices alone to establish such value, thus placing upon the Government the burden of sustaining the value found by the local appraiser.

We hold that the appellate division *erred* in affirming the decision of the trial judge, and that it should either have reversed the same, with directions to dismiss the appeal to reappraisement for lack of evidence establishing foreign-market value of the merchandise, or, in its discretion, have remanded the case to the trial judge for a new trial.

The judgment here appealed from is *reversed* and the cause is *remanded* for further proceedings not inconsistent with the views herein expressed.