WHITE, Immigration Com'r, v. GREGORY et al.

(Circuit Court of Appeals for the Ninth Circuit.   May 18, 1914.)

No. 2378.

ALIENS (§ 54*)—EXCLUSION OF ALIENS—REVIEW BY COURT.

Under Act Feb. 20, 1907, c. 1134, § 2, 34 Stat. 898, as amended by Act March 26, 1910, c. 128, § 1, 36 Stat. 263 (U. S. Comp. St. Supp. 1911, p. 500), and Act March 4, 1913, c. 141, 37 Stat. 736, providing that aliens likely to become a public charge shall be excluded from admission to the United States, and section 25, providing that where an alien is excluded under any law or treaty, the decision of the appropriate immigration officer, if adverse to his admission, shall be final, unless reversed on appeal to the Secretary of Labor, where a board of special inquiry convened in the manner provided by law decided that aliens were likely to become a public charge, and its decision was approved by the Secretary of Commerce and Labor, the court could only determine whether the aliens were given the hearing provided by statute, and could not inquire into the sufficiency of probative facts, or consider the reasons for the conclusion reached by the officers.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Habeas corpus by K. Gregory and others against Henry M. White, Commissioner of Immigration at Seattle, Wash. From an order discharging petitioners, the commissioner appeals. Reversed, with instructions.

Clay Allen, U. S. Atty., of Seattle, Wash., and G. P. Fishburne, Asst. U. S. Atty., of Tacoma, Wash., for appellant.

John R. Parker and Jacob Kalina, both of Seattle, Wash., for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge.   This was a petition by the appellees to the District Court of the United States for the Western District of Washington, Northern Division, for a writ of habeas corpus.   It was alleged in the petition that the petitioners were born in Russia; that they left Russia with their own free will; that they were seeking to enter the United States of their free will and good faith, intending to make the United States their permanent residence and home, and fully intending to obey and comply with all the laws of the United States; that they were being detained at the United States Detention Station in the city of Seattle, Wash., by the United States Commissioner of Immigration, contrary to the statutes in such cases made and provided.   The court thereupon issued the writ, to which, and to the petition, Henry M. White, Commissioner of Immigration, made return that the petitioners were aliens and Russians; that they arrived at the port of Seattle, Wash., on December 19, 1913, and made application for admission to the United States; that they were held for special

inquiry by the Immigrant Inspector, and a board of special inquiry was appointed in accordance with the provisions of section 25 of the Immigration Act of February 20, 1907; that the board of special inquiry conveyed in the manner provided by law on December 23, 1913, and after a full hearing the board decided to reject the aliens on the ground that they were persons who were likely to become a public charge for the following reasons:

"First, because they are common farm laborers, and there is not work for them in the United States; second, because they have but a limited amount of money, insufficient to maintain them during the winter; third, because there are 800 to 1,000 Russians unemployed in Seattle and thousands of other nationalities in the same condition, and reports from the interior are to the effect that the supply of common labor is far in excess of the demand; fourth, that any addition to the unemployed should be guarded against and alien laborers should not be permitted to enter the United States at this time."

From the decision of the board of special inquiry the petitioners appealed to the Secretary of Commerce and Labor, and the Secretary approved the decision of the board of special inquiry. Upon a hearing before the court the facts set forth in the return of the Commissioner of Immigration were established substantially as alleged in the return. It appeared, further, that the last permanent residence of the petitioners was in Sinnbirsk, Krasnoie, Russia; that their port of departure from Russia was Vladivostock, where passports were issued to them permitting them to leave Russia; thence they took passage to Yokohoma, Japan; thence from Yokohoma to Vancouver, British Columbia, on the steamship "Tamba Maru"; that they were refused landing at the latter port, and thereupon they continued on board of the same vessel to Seattle. The board of special inquiry found that the petitioners were persons likely to become a public charge for the reasons stated in the return of the Commissioner of Immigration. The court thereupon ordered the discharge of the petitioners. From the order of discharge, the appellant brings the case to this court.

Section 2 of the act of February 20, 1907 (34 Stat. 898), as amended by the acts of March 26, 1910 (36 Stat. 263), and March 4, 1913 (37 Stat. 736), provides that certain classes of aliens shall be excluded from admission to the United States. Among these are "persons likely to become a public charge." In section 25 of the same act it is provided—

"that in every case where an alien is excluded from admission into the United States under any law or treaty now existing or hereafter made, the decision of the appropriate immigration officer, if adverse to the admission of such alien, shall be final unless reversed on appeal to the Secretary of Labor."

In the case of Nishimura Ekiu v. United States, 142 U. S. 651, 12 Sup. Ct. 336, 35 L. Ed. 1146, the Inspector of Immigration at the Port of San Francisco, after making the inspection of the alien immigrant, Nishimura Ekiu, as required by the act of March 3, 1891, c. 551 (26 Stat. 1084 [U. S. Comp. St. 1901, p. 1294]), refused to allow her to land, and made a report to the Collector of Customs, stating the facts, which tended to show, and which the inspector decided did show, that she was "a person likely to become a public charge," and was within one of the classes of aliens excluded from admission into the United

213 F.—49

States by the first section of the act of March 3, 1891.    Section 8 of that act provided that:

"All decisions made by the inspection officers or their assistants touching the right of any alien to land, when adverse to such right, shall be final .unless an appeal be taken to the Superintendent of Immigration, whose action shall be subject to review by the Secretary of the Treasury."

The question before the Supreme Court was whether the action of the Inspector of Immigration at San Francisco, refusing to allow the alien immigrant to land, was final.    The court held that it was—

"an accepted maxim of international law that every sovereign nation has the power, as inherent in sovereignty, and essential to self-preservation, to forbid the entrance of foreigners within its dominions, or to admit them only in such cases and upon such conditions as it may see fit to prescribe.  *  *  * In the United States this power is vested in the national government, to which the Constitution has committed the entire control of international relations, in peace as well as in war.    It belongs to the political department of the government, and may be exercised, either through treaties made by the President and Senate, or through statutes enacted through Congress; upon whom the Constitution has conferred power to regulate commerce with foreign nations, including the entrance of ships, the importation of goods, and the bringing of persons into the ports of the United States."

The court held, further, that the admission of aliens into the country under the act of 1891 had been intrusted to the supervision of executive officers of the government, and that:

"In such a case, as in all others in which a statute gives a discretionary power to an officer, to be exercised by him upon his own opinion of certain facts, he is made the sole and exclusive judge of the existence of those facts, and no other tribunal, unless expressly authorized by law to do so, is at liberty to re-examine or controvert the sufficiency of the evidence on which he acted."

The court accordingly held that the decision of the inspector that the alien immigrant should not be permitted to land because within one of the classes specified in that act was final and conclusive.

The finality of the decision of the political department of the government respecting the right of an alien to be admitted into the United States, as provided in the act of 1907, is identical with that of the act of 1891, and Congress must be held to have adopted the provision with full knowledge of the construction placed upon it by the judicial department of the government.    Furthermore, the substitution in the later act of a board of special inquiry, composed of three officers, at the port of arrival, for the inquiry of a single officer, that of the Superintendent of Immigration, provided in the earlier act, with an appeal to the Commissioner of Immigration at the port of arrival, and from the Commissioner of Immigration to the Secretary of Labor, in place of review by the Secretary of the Treasury, indicates the purpose of Congress to give to the alien every opportunity to present to the political department of the government his claim of right to be admitted into the United States, and to that department full authority to finally and conclusively determine such right.

In the present case the executive officers found that the aliens were persons likely to become a public charge.    This is a ground of exclusion provide by law.    In reaching this conclusion the officers gave the

aliens the hearing provided by the statute. This is as far as the court can go in examining such proceedings. It will not inquire into the sufficiency of probative facts, or consider the reasons for the conclusion reached by the officers. As said by the Supreme Court:

"Unless and until it is proved to the satisfaction of the judge that a hearing, properly so called, was denied, the merits of the case are not open, and, we may add, the denial of a hearing cannot be established by proving that the decision was wrong." Chin Yow v. United States, 208 U. S. 8, 13, 28 Sup. Ct. 201 (52 L. Ed. 369).

The order and judgment of the court below are reversed, with instructions to dismiss the writ of habeas corpus.