**UNITED STATES ex rel. FINK v. TOD,**
**Commissioner of Immigration. ***

(Circuit Court of Appeals, Second Circuit. July 10, 1924. On Application for Reargument, July 25, 1924.)

No. 322.

**1. Aliens ⊂∞54—Constitutional law ⊂∞68(1) —Power to admit or exclude aliens vested in political and not judicial department; nature of proceeding stated.**

Power to admit or exclude aliens is vested in political and not judicial department, and no judicial tribunal can re-examine evidence or controvert its sufficiency, unless expressly authorized to do so by law; but proceedings by immigration officials are administrative, and not judicial, and their decisions are not technically res judicata.

**2. Aliens ⊂∞54—Appointment on appeal board of medical officers, who participated in original hearing excluding alien, held not to render hearing unfair.**

Under Immigration Act Feb. 5, 1917, § 16 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼i), membership on board of medical officers is within discretion of Surgeon General, and hearing on appeal from decision of board that alien applicant for admission to United States was feeble-minded was not unfair, because Surgeon General appointed on appellate board one or more medical officers, who participated in original hearing.

**3. Aliens ⊂∞54—No appeal or rehearing after decision of board of special inquiry excluding mentally or physically defective alien; "final."**

Under Immigration Act Feb. 5, 1917, § 17 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼ii), providing that decision of board of special inquiry, based on medical certificate rejecting alien because of "any mental or physical disability," shall be final, no appeal lies to Secretary of Labor in such case, and certificate cannot be superseded by decisions of board of medical officers subsequently convened under regulations issued by Surgeon General; "final" meaning "last; conclusive; from which there is no appeal."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Final.]

**4. Aliens ⊂∞54—Aliens illegally in United States, arrested on warrant, entitled to prove right to enter or remain.**

Aliens who are illegally in United States may, within period specified in Immigration Act Feb. 5, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 959, 960, 4289¼a–4289¼u), be deported; but they have right to prove their right to enter or remain, and cannot be taken into custody without warrant.

**5. Aliens ⊂∞53—Conditionally admitted under bond may be detained without warrant by immigration officers.**

Alien may be detained without warrant until immigration officers determine whether he is entitled to admission, and his admission under bond requiring him to depart within six months does not discharge him from custody, and if at end of six months he is surrendered by sureties or voluntarily comes within their custody, he may be detained without warrant.

**6. Aliens ⊂∞32(13)—Decision of immigration officers on matters of fact conclusive on court, if hearing fair.**

Decision of immigration officers on matters of fact, if fair hearing has been accorded alien applicant for admission to United States, is conclusive, and court cannot interfere in habeas corpus.

**7. Aliens ⊂∞32(13) — Feeble-mindedness of alien applicant for admission held question of fact.**

Feeble-mindedness of alien applicant for admission to United States held question of fact, as to which finding of immigration officials is conclusive on habeas corpus.

**8. Aliens ⊂∞54—Admission in deportation proceedings of letter written after final decision of board of special inquiry held not to render hearing unfair.**

Admission into record of deportation proceedings of letter written by Commissioner of Immigration to Commissioner General of Immigration after decision of board of special inquiry, excluding alien because of feeble-mindedness, which, under Immigration Act Feb. 5, 1917, § 17 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼ii), was final and unappealable, held not to render hearing unfair.

Appeal from the District Court of the United States for the Southern District of New York.

Habeas corpus by the United States, on the relation of Pauline Fink, against Robert E. Tod, Commissioner of Immigration, Ellis Island, Port of New York. From an order dismissing the writ, relator appeals. Affirmed.

Harry Kopp, of New York City (Max J. Kohler, Louis Marshall, and Morris L. Stern, all of New York City, of counsel), for appellant.

William Hayward, U. S. Atty., of New York City (James C. Thomas, Asst. U. S. Atty., of New York City, of counsel), for respondent.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

*Certiorari granted 45 S. Ct. 125, 69 L. Ed. —, and order reversed 45 S. Ct. —, 69 L. Ed. —.

ROGERS, Circuit Judge. This is an appeal from an order dismissing a writ of habeas corpus in a proceeding arising under the Immigration Law (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 959, 960, 4289¼a–4289¼u). At the time of the issuance of the writ the relator was held in the custody of the respondent under a warrant of deportation. In some of its aspects it is an unusual and extraordinary case. It appears that Pauline Fink, the relator and appellant herein, arrived at the port of New York with her father and four brothers and sisters on November 29, 1920. At the time of her arrival in this country she was in her thirteenth year, having been born in Poland on April 15, 1908. The relator is a deaf mute, having become such in her second year as a consequence of an attack of typhus. There was no opportunity for her to receive in Poland any education, because of the absence of institutions for deaf mutes in the place where she resided. On the arrival at Ellis Island she was examined by two government surgeons, who certified that she was feeble-minded, having failed to discover her deaf-mutism. This examination took place at Ellis Island on December 3, 1920. The matter was taken up with the officials at Washington, with the result that the Secretary of Labor directed that the alien be granted a further hearing before a medical board concerning her feeble-mindedness, and that the parties interested in her be accorded the privilege of having a private practitioner, of their own choosing, present at the examination if they so desired. Thereafter further examinations took place, as will presently more fully appear.

The relator was temporarily discharged from the immediate custody of the immigration officials and admitted under a surety company bond. She was allowed to enter a public school for the deaf, maintained by the department of education of the city of New York. The Secretary of Labor further extended her time to remain in the country. This power he possessed under section 18 of the act providing for deportation (section 4289¼j). It was not until May 28, 1923, 2 years and 6 months after her arrival at Ellis Island, that the Second Assistant Secretary of Labor notified her bondsmen to effect her deportation on or before June 9, 1923. On June 21, 1923, the alien surrendered herself at Ellis Island, and on the same day a writ of habeas corpus was served on the Commissioner of Immigration on her behalf. A return to the writ was made on June 26, 1923.

The District Judge dismissed the writ and remanded the relator, and in doing so filed, on October 3, 1923, a memorandum opinion stating briefly his opinion. In it he said: "In my judgment the Secretary is entitled, and indeed required, to act upon the balance of opinion of the medical men who by statute are authorized to pass on cases such as this." The opinion filed contained no comment upon the right to submit the question to successive boards, but declared: "It cannot be said that there was a lack of evidence justifying the Secretary's decision." It is evident that the District Judge thought that the Secretary was concluded by the judgment of the medical authorities.

The Immigration Act of 1917 (39 Stat. part 1, p. 874, c. 29, § 3 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4287¼b]) provides as follows: "That the following classes of aliens shall be excluded from admission into the United States: All idiots, imbeciles, feeble-minded persons, epileptics, insane persons; persons who have had one or more attacks of insanity at any time previously; persons of constitutional psychopathic inferiority; persons with chronic alcoholism; paupers; professional beggars; vagrants; persons afflicted with tuberculosis in any form or with a loathsome or dangerous contagious disease; persons not comprehended within any of the foregoing excluded classes who are found to be and are certified by the examining surgeon as being mentally or physically defective, such physical defect being of a nature which may affect the ability of such alien to earn a living. * * *" The language is: "That the following classes of aliens shall be excluded." And among the classes so to be excluded are "feeble-minded persons." Persons afflicted with deaf-mutism are not expressly mentioned in the statute.

[1] It is to be kept in mind that the power to admit or exclude aliens into the country is not vested in the judicial department of the government, but is in its political departments. It is to be exercised by the executive authority in the manner prescribed by Congress, except in so far as the judicial department is authorized to intervene. And Congress has intrusted to the administrative officers of the government the final determination of the facts upon which the right of the alien to enter depends, and no judicial tribunal can re-examine the evidence on which the administrative officers act, and cannot controvert its sufficiency, unless expressly authorized to do so by law. Fong Yue Ting v. United

States, 149 U. S. 698, 713, 13 Sup. Ct. 1016, 37 L. Ed. 905. The proceedings to determine whether the alien has the right to enter are administrative, and not judicial, and the immigration officials, authorized by Congress to determine the questions of fact which arise in the course of the proceedings, are administrative and not judicial officers, and their decisions are not technically res judicata.

The alien was given a hearing before a board of special inquiry on November 30, 1920. This hearing was deferred, pending the result of the medical examination of the alien; and at the deferred hearing on December 3, 1920, there was filed the medical certificate of two examining surgeons. It certified that they had examined the alien and that she was found to be feeble-minded. The alien was thereupon ordered excluded and deported. Section 16 of the act of 1917 (section 4289¼i) provides that any alien certified for any mental defect may appeal to the board of medical officers of the United States Public Health Service, which shall be convened by the Surgeon General of that service. A second medical examination took place before such a board on December 28, 1920. This board consisted of three surgeons which unanimously certified as follows: "We have to-day examined the above-named alien, and find that she is suffering from deaf-mutism and is feeble-minded. The certificate previously issued in her case is hereby affirmed."

Thereupon, and on January 15, 1921, the Commissioner of Immigration at Ellis Island was duly informed by the Acting Secretary of Labor that the father and his children, other than the relator, were admitted. As respects the relator the Commissioner was informed as follows: "Owing to the distressing conditions of Poland at the present time, the deaf child is admitted to the care of her parents for six months, with bond that at the expiration of that period she shall be returned to Poland, accompanied by her father or by some accompanying substitute for him."

The bond was furnished, and the surety company was advised that the relator was to leave the United States on or before July 20, 1921. On that date the Secretary extended the time for the relator's departure for 60 days, with the privilege of a rehearing as to her mental condition. But the re-examination did not take place until September 28, 1921. On that date she was again examined by a board of medical officers, which certified that she was suffering

from feeble-mindedness and deaf-mutism. It confirmed the medical certificates previously issued. This was a second board of medical officers, which is an appeal board, and their certificate was the third medical certificate issued in this case.

On October 26, 1921, it appears another medical examination took place before a board of medical officers convened by the Surgeon General. This was a third appeal board. It confirmed the previous medical certificates issued, and certified that it found no change in the relator's mental condition. The time was again extended for the alien's deportation. The surety company not having produced the alien in accordance with the terms of the bond, a warrant for the relator's arrest was issued under date of September 14, 1921; but the Assistant Secretary of Labor directed that service of the warrant should be deferred, and it does not appear that it was ever served. Instead, the term for her deportation was further extended.

On February 15, 1922, the relator was again examined at Ellis Island before a board of medical officers. This was a fourth appeal board. It certified that the relator was feeble-minded and confirmed the prior medical certificates. On March 21, 1922, the Assistant Secretary of Labor deferred further proceedings for a period of one year, and directed that at the end of that time there should be submitted a further medical certificate as to her condition.

On March 22, 1923, she once more was examined before a board of medical officers convened by the Surgeon General. This was the fifth appeal board. It sat at Washington and certified as follows: "Examination of the alien was conducted at the time and place above indicated. A careful review was made of the Department of Labor records in this case, together with inquiry into the environment of this alien abroad and while a pupil in public school No. 47, School for the Deaf, No. 225 East Twenty-Third street, New York City, in which institution she has been a pupil for approximately two years. As a result of these inquiries and our examination, the board certifies that in its opinion this alien is not feeble-minded, and the certificate of feeble-mindedness previously issued in her case is withdrawn. This alien is suffering from deaf-mutism, a condition which may affect her ability to earn a living."

The Assistant Secretary of Labor was not favorably impressed with the action of the last board, and on March 27, 1923, in

an official "Memorandum for the Board of Review" states: "Personally I do not see where the situation has changed at all." He adds: "This country has embarked on a program of European immigration. The clear and specific intent of that is to admit only those who are clearly fit and who are normal in every way. Neither one of these two aliens is normal, nor approaching normality. The file is voluminous, and I have not the time to go into it carefully. One of the purposes for which the board of review was created is to do that thing. Apparently it was not done. The case is referred back to the board of review, with a request that it be gone through carefully, bearing in mind the original certification of the alien, Pauline Fink, and her father, for consideration as though the two had just arrived and were applying for admission."

On April 19, 1923, the case came before the board of review. There were no appearances at this time, and the board simply reviewed the history of the entire case from the beginning, and stated the facts at some length, and concluded as follows: "The last certificate rendered by the United States Public Health Service clears the record as to feeble-mindedness, and while the department might accept this certificate and permanently admit the alien, yet it is believed that in view of all the circumstances the question of mutism and lpc[1] should be thoroughly explained before a final order is made. Wherefore it is recommended that this alien be re-examined at Ellis Island by a full board of public health surgeons, with the privilege of having present her own medical expert witness. It is further recommended that the certificate rendered state explicitly the relation, if any, of the child's mutism to the previous certificates of feeble-mindedness, and also contain a comprehensive statement as to the cause of her mutism, and it might be well to ascertain if there exists a close blood relationship between the parents of the child, and when the re-examination is held that the certificate and report be forwarded to the department for further consideration."

The recommendation for a re-examination of the alien was approved by the Assistant Secretary of Labor, and a re-examination was ordered. With these various and conflicting certificates before him, the Assistant Secretary of Labor apparently did not know which he should be governed by, and

inquired of the Surgeon General on the subject. He was informed on April 16, 1923, by the Acting Surgeon General, as follows: "I have the honor to state that in a case of this kind the decision made by the last board convened prevails."

The Surgeon General, acting upon the order of the Assistant Secretary, above referred to, accordingly convened at Ellis Island another board of medical officers on May 9, 1923. This was the sixth appeal board. It certified as follows: "The board has examined the alien and has decided by a vote of three to two that she is feeble-minded. It is the unanimous opinion of the board that the alien is a deaf mute. The board has no means of ascertaining the cause of the deaf-mutism other than the statement of relatives that it is due to an illness in infancy, which is possible. As far as the board could ascertain, there is no close blood relationship between the parents of the alien."

After the action taken by this last board the department decided that the relator should be deported, and action with that end in view was taken, which led to the issuance of the writ of habeas corpus, and to the dismissal of that writ, and this appeal as already stated. We have thus set forth at some length the history of this case. The course pursued seems to us strange and unusual, and it raises some important questions and has received our careful consideration.

[2] It appears that on some of these appeal boards there sat, by appointment of the Surgeon General, one or more surgeons who had sat on boards whose action was to be reviewed, and upon the argument in this court it was earnestly urged upon us that they were disqualified on that account from sitting in the board. We have not been impressed by that contention. It is true that in a number of states constitutional or statutory provisions disqualify a judge from sitting in a judicial proceeding concerning a matter upon which he has a personal bias or prejudice, so that he cannot exercise his functions impartially. In United States v. Lancaster, 5 Wheat. 434, 5 L. Ed. 127, a case decided 100 years ago, Chief Justice Marshall, speaking for the Supreme Court, held that a District Judge could not sit in the Circuit Court on a writ of error from his own decision; and this decision appears to have been reached without reference to any constitutional or statutory provision. In the Act of March 3, 1891, however, which established the Circuit Court of Ap-

---

[1] Lpc—likely to become a public charge.

peals, it seems to have been thought necessary to provide "That no justice or judge before whom a cause or question may have been tried or heard in a District Court, or existing Circuit Court, shall sit on the trial or hearing of such cause or question in the Circuit Court of Appeals." 26 St. 826, c. 517, § 3 (Comp. St. § 1112). And it is well settled that consent of the parties to the litigation that such a judge may sit in the appellate court cannot remove his disqualification. William Cramp & Sons Ship & Engine Building Co. v. International Curtis Marine Turbine Co., 228 U. S. 645, 649, 33 Sup. Ct. 722, 57 L. Ed. 1003; Rexford v. Brunswick-Balke Co., 228 U. S. 339, 342, 33 Sup. Ct. 515, 57 L. Ed. 864; Moran v. Dillingham, 174 U. S. 153, 19 Sup. Ct. 620, 43 L. Ed. 930; American Construction Co. v. Jacksonville, etc., Co., 148 U. S. 372, 387, 13 Sup. Ct. 758, 37 L. Ed. 486.

The purpose of the act is to make certain that the court shall be constituted of judges uncommitted and uninfluenced by having expressed or formed an opinion in the court of first instance. The litigant is entitled to have his case heard by judges of absolute neutrality and free from any prejudice. But, in the absence of a constitutional or statutory provision to the contrary; it seems to be the rule generally recognized in the state courts that a judge who heard the case in the court below is not disqualified from sitting in the court of appeals to review the judgment. Pierce v. Delamater, 1 N. Y. 17, 18; Taylor v. Williams, 26 Tex. 583; Galveston & Houston Investment Co. v. Grymes, 94 Tex. 609, 615, 63 S. W. 860, 64 S. W. 778; Forde v. Commonwealth, 16 Grat. (Va.) 547; Fruit Co. v. Fox, 76 N. J. Law, 482, 70 Atl. 460; McConnell v. Goodwin, 189 Ala. 309, 66 South. 675, Ann. Cas. 1917A, 839; State v. Robinson, 35 N. D. 410, 415, 160 N. W. 512; 23 Cyc. 588.

But, whatever the rule on this subject may be as respects the right of a judge to sit in an appellate court, it has no application in an administrative proceeding. And the Immigration Act specifically declares in section 23 (section 4289¼o) that "the duties of Commissioners of Immigration and other immigration officials in charge of districts, ports, or stations shall be of an administrative character, to be prescribed in detail by regulations prepared under the direction or with the approval of the Secretary of Labor." The proceedings before the immigration officials being administrative, and not judicial, it does not follow that the same rule is applicable to them that is applicable in judicial proceedings. So, that, even if a judge who had heard a case in the court below was disqualified at common law from sitting in the appellate court to review the case, we should not hold that one who had served in the first instance as an examining surgeon of the alien was thereby disqualified from serving as a member of a board of medical officers which is to hear additional evidence and reach an independent conclusion. We think the membership of the board of medical officers is a matter within the discretion of the Surgeon General. This court cannot say that a hearing is "unfair" simply because the Surgeon General appoints a board of medical officers, one or more of whom participated in the hearing from which the appeal is taken. A like conclusion was reached in the Southern district of New York in Goldbaum v. Curran (D. C.) 298 Fed. 118.

Under the act of 1917 it is provided that, upon the arrival at a port of the United States of any vessel bringing aliens, it is the duty of the proper immigration officials to make an inspection of such aliens, to determine whether they are entitled to enter the country. The physical and mental examination of such aliens is made by medical officers of the United States Public Health Service, who certify "for the information of the immigration officers and the boards of special inquiry" any and all physical and mental defects or diseases observed by them in the alien. All aliens so arriving must be examined "by not less than two" such medical officers, and "any alien certified for insanity or mental defect may appeal to the board of medical officers of the United States Public Health Service, which shall be convened by the Surgeon General of the United States Public Health Service, and said alien may introduce before such board one expert medical witness at his own cost and expense." 39 St. pt. 1, p. 885, § 16.

The examination, other than physical or mental, is conducted by at least two immigrant inspectors, and every alien who may not appear to the examining inspector at the port of arrival "to be clearly and beyond a doubt entitled to land" is to be detained for examination in relation thereto by a board of special inquiry. 39 St. pt. 1, p. 886, § 16. The only appeal under the act of 1917 which is expressly given from the decision of the examining medical officers who have certified the examined alien for insanity or mental defect is the one given in section 16, which provides that he

"may appeal to the board of medical officers of the United States Public Health Service, which shall be convened by the Surgeon General of the United States Public Health Service."

[3] Then section 17 of the act (section 4289¼ii), which relates to boards of special inquiry, provides as follows: " * * * In every case where an alien is excluded from admission into the United States, under any law or treaty now existing or hereafter made, the decision of a board of special inquiry adverse to the admission of such alien shall be final, unless reversed on appeal to the Secretary of Labor: Provided, that the decision of a board of special inquiry shall be based upon the certificate of the examining medical officer and, except as provided in section twenty-one hereof, shall be final as to the rejection of aliens affected with tuberculosis in any form or with a loathsome or dangerous contagious disease, or with any mental or physical disability which would bring such aliens within any of the classes excluded from admission to the United States under section three of this act."

Section 21 (section 4289¼kk), referred to above, has no important bearing upon the direct question herein involved. It gives authority to the Secretary of Labor in his discretion to admit any alien liable to be excluded because likely to become a public charge, or because of physical disability "other than tuberculosis in any form or a loathsome or dangerous contagious disease," upon giving a suitable and proper bond.

Under the act of 1917 it is the board of special inquiry, not the board of medical officers, which decides to admit or exclude an alien applying for admission to the United States. The act provides (§ 17) that these "boards [of special inquiry] shall have authority to determine whether an alien who has been duly held shall be allowed to land or shall be deported." The board of special inquiry is to consist of three members, and the decisions of any two members "shall prevail"; but either the alien or any dissenting member of the board may appeal through the Commissioner of Immigration at the port of arrival and the Commissioner General of Immigration to the Secretary of Labor. The taking of the appeal operates to stay any action in regard to the final disposal of the alien whose case is appealed until the receipt by the Commissioner of Immigration at the port of arrival of the decision upon the appeal. But the act provides that such decision "shall be rendered solely upon the evidence adduced before the board of special inquiry," and the act provides that in every case where an alien is excluded "the decision of a board of special inquiry * * * shall be final, unless reversed on appeal to the Secretary of Labor." But the act, after declaring that the decision of the board of special inquiry is final unless reversed on appeal to the Secretary of Labor, immediately adds: "Provided, that the decision * * * shall be final as to the rejection of aliens affected with * * * any mental or physical disability. * * *" Unless it was meant by this proviso that decisions therein referred to were not to be subject to be reversed by the Secretary, there was no necessity for incorporating it into the act, and it added nothing whatever to the act, but was a mere repetition of what was previously stated therein. It is meaningless and unnecessary unless it has the meaning we attribute to it.

The Immigration Act, herein involved, which is the act of 1917, differs in some respects from that of 1907 (34 Stat. 898) in its provisions respecting the medical examination of aliens seeking admission into the United States. Under both acts feeble-minded persons are included among the excluded classes. In both acts the physical and mental examination of arriving aliens must be made by medical officers, who certify for the information of the immigration officers and the boards of special inquiry any and all physical and mental defects or diseases observed in the alien. The act of 1907 made no provision for a board of medical officers to which an appeal could be taken from the decision of the medical officers who examined the alien. Both acts provide for an examination by a board of special inquiry of every alien who does not appear to the immigrant inspector to be clearly and beyond doubt entitled to land.

The act of 1907, in section 25, expressly enacts as follows: " * * * That in every case where an alien is excluded from admission into the United States, under any law or treaty now existing or hereafter made, the decision of the appropriate immigration officers, if adverse to the admission of such alien, shall be final, unless reversed on appeal to the Secretary of Commerce and Labor; but nothing in this section shall be construed to admit of any appeal in the case of an alien rejected as provided for in section ten of this act." And section 10 provides as follows: "That the decision of the board of special inquiry, hereinafter provid-

ed for, based upon the certificate of the examining medical officer, shall be final as to the rejection of aliens affected with tuberculosis or with a. loathsome or dangerous contagious disease, or with any mental or physical disability which would bring such aliens within any of the classes excluded from admission to the United States under section two of this act."

It is clear that under the act of 1907, if the alien was rejected for medical reasons, the decision of the board of special inquiry could not be reversed by the Secretary of Labor, and that no appeal from such a decision lay. The concluding provision in section 17 of the act of 1917 shows clearly to us that the power of the Secretary to reverse on appeal, except as provided in section 21, was not intended to apply to a decision, based upon a medical certificate, rejecting aliens affected with "any mental or physical disability," which brings the alien within any of the excluded classes. The Secretary, as we have seen, did not have the power to entertain an appeal in such cases under the act of 1907, and it is equally plain to us that he has no such power under the act of 1917.

The construction which we have placed upon the act that no appeal lies to the Secretary from a decision of a board of special inquiry based upon a certificate of the medical officers is the construction which has been placed upon the act by the Commissioner General of Immigration, with the approval of the Secretary of Labor. In the Rules and Regulations issued by the Commissioner General and approved by the Secretary is rule 14 relating to appeals. That rule (subdivision D, paragraph 1) is as follows: "No appeal lies where the decision of a board of special inquiry, based upon the certificate of the examining medical officer, as required by section 17 of the act of February, 1917, rejects an alien because (a) he is afflicted with tuberculosis in any form or a loathsome contagious or dangerous contagious disease, or (b) he is an idiot or an imbecile or an epileptic, or is insane or feeble-minded, or (c) he is afflicted with constitutional psychopathic inferiority or has any mental defect or is a chronic alcoholic."

In the instant case the board of special inquiry, which is the board that first acted, excluded the relator as we have seen; the exclusion being based upon the medical certificate. The word "final," as defined in Bouvier's Law Dictionary, is: "Last; conclusive; pertaining to the end." And in Burrill's Law Dictionary it is said to be "that which terminates a matter or proceeding." In 13 Am. & Eng. Encyc. of Law, p. 19, it is said: "Final means conclusive; from which there is no appeal." When a legislative act creates a tribunal and provides that its decision shall be "final" on a given matter, the courts have held that the legislative intent was that its decision was not subject to review or appeal, but was conclusive of the question decided. Grubnau v. United States, 176 Fed. 904, 906, 100 C. C. A. 374; Blanding v. Sayles, 23 R. I. 226, 49 Atl. 992; Coon v. Mason County, 22 Ill. 666; Moore v. Mayfield, 47 Ill. 167; Appeal of Houghton, 42 Cal. 35, 55; Appeal of Bixler, 59 Cal. 550, 556; Tyler v. Connolly, 65 Cal. 28, 2 Pac. 414; Lambert v. Bates, 137 Cal. 676, 70 Pac. 777; Simon v. Portland, 9 Or. 437; Selleck v. Common Council of South Norwalk, 40 Conn. 359; Pittsburgh, Fort Wayne, etc., Ry. Co. v. Gillespie, 158 Ind. 454, 63 N. E. 845; People v. Fitz Gerald, 41 Mich. 2, 2 N. W. 179; Hoste v. Dalton, 137 Mich. 522, 100 N. W. 750; In re City of New York, 49 N. Y. 150, 154; People v. Common Council of City of Kingston, 53 App. Div. 58, 65 N. Y. Supp. 590, 591; Matter of Delaware & Canal Co., 69 N. Y. 209; In re Commissioners of Central Park, 50 N. Y. 493; In re Canal Street, 12 N. Y. 406; New York Central R. Co. v. Marvin, 11 N. Y. 276; In re Village of Cedarhurst, 121 App. Div. 576, 106 N. Y. Supp. 275, 276; Porter v. Griffin, 143 Ky. 138, 136 S. W. 130; Man v. Stoner, 14 Wyo. 183; Ackerman v. Taylor, 9 N. J. Law, 65.

In Queen v. Hunt, 6 El. & Bl. 408, in the Exchequer Chamber, the court had before it a statute which provided that the decision of an auditor of the poor law on any question as to an attorney's bill, in certain cases should be "final." It was held, all the judges concurring, that no appeal would lie from his decision. Chief Justice Campbell pointed out that the common law gave no appeal in such a case, but that the appeal would depend strictly upon statute, and that the statute upon which the whole matter depended expressly declared that the auditor's decision was final. Referring to the fact that it had been argued that, if full effect was given to the word final, the enactment would lead to absurd results, the Chief Justice said: "But, as it seems to me, no other sense can be given to the word than that the decision of the auditor that the parish is not liable shall be conclusive. I am not bound to inquire whether this is

reasonable or not. Where the words of the Legislature may bear two meanings, by all means let us take the more reasonable meaning; but in such a case as this, where the words can bear but one meaning, I obey without inquiring whether the enactment is reasonable or not." And Crompton, J., said: "I must give the word 'final' some meaning; and I think it can be no other than that the decision shall be final; that is, not subject to the appeals given in the previous sections."

In the instant case the whole subject is statutory. The statute creates the immigration officials and defines their powers. They have such powers, and such only, as the statute confers. The statute declares that the board of special inquiry shall base their decision upon the medical certificate. We can only interpret this to mean that the medical certificate is conclusive as to the physical and mental condition of the alien examined. And we do not think it was intended that the board of special inquiry constituted of nonmedical men should have the right to sit in review upon decisions of medical questions rendered by a board of medical officers or by a medical inspector. If such was not the intention, why require that the decision of the board of special inquiry "shall be based upon the certificate of the examining medical officer"?

That Congress intended that such a construction as we have placed upon the act should be given to it is indicated by the report of the Senate committee which drafted the act and in which they state the purposes of their action to "meet recent court decisions, tending to modify the principle upon which provisions of this kind in the immigration law have heretofore been based, that on medical questions the opinions of doctors as against that of laymen should prevail. Of course, practical questions should be determined by the immigration officials, but questions of a purely medical nature must be determined by members of the medical profession." The word "final," as we understand it, in the connection in which it is used in the sections now under consideration, is that it is conclusive upon the board of special inquiry and conclusive upon the Secretary of Labor.

The act of 1903 contained the following provision: "That the decision of the board of special inquiry, hereinafter provided for, based upon the certificate of the examining medical officer, shall be final as to the rejection of aliens afflicted with a loathsome or with a dangerous contagious disease, or with any mental or physical disability which would bring such aliens within any of the classes excluded from admission to the United States under section two of this act." 32 St. part 1, § 10, p. 1216. And also the following provision: "That such boards of special inquiry shall be appointed by the commissioners of immigration at the various ports of arrival as may be necessary for the prompt determination of all cases of aliens detained at such ports under the provisions of law. Such boards shall consist of three members, who shall be selected from such of the immigrant officials in the service as the Commissioner General of Immigration, with the approval of the Secretary of the Treasury, shall from time to time designate as qualified to serve on such boards: Provided, that at ports where there are fewer than three immigrant inspectors, the Secretary of the Treasury, upon recommendation of the Commissioner General of Immigration, may designate other United States officials for service on such boards of special inquiry. Such boards shall have authority to determine whether an alien who has been duly held shall be allowed to land or be deported. All hearings before boards shall be separate and apart from the public, but the said boards shall keep complete permanent records of their proceedings and of all such testimony as may be produced before them; and the decision of any two members of a board shall prevail and be final, but either the alien or any dissenting member of said board may appeal, through the commissioner of immigration at the port of arrival and the Commissioner General of Immigration, to the Secretary of the Treasury, whose decision shall then be final; and the taking of such appeal shall operate to stay any action in regard to the final disposal of the alien whose case is so appealed until the receipt by the commissioner of immigration at the port of arrival of such decision." 32 St. part 1, § 25, p. 1220.

These provisions were construed by the Circuit Court of Appeals in the Third Circuit in Rodgers v. United States, 157 Fed. 381, 385, 85 C. C. A. 79. The court in that case held that the word "final," as used in section 10, had to be construed in the light of the unqualified language of section 25, by which the privilege of appeal was given in all cases, and the court said that such a judicial interpretation of the word "final" in section 10 as would antagonize the plain meaning of section 25 should be avoided. We have no criticism to make of that deci-

sion. The act of 1903 and that of 1917 are so fundamentally different in their provisions that the Rodgers Case seems to us without any application to the case now under consideration.

In Pearson v. Williams, 136 Fed. 734, 69 C. C. A. 386, this court had before it the meaning of the word "final" as found in the Immigration Act of 1903 (32 Stat. 1213), and which referred to the findings of a board of special inquiry, where no appeal had been taken from its decision. It was there held that the decision of the board was not to be regarded as res adjudicata and conclusive of the right to enter and remain, so as to deprive the Secretary of Labor of the right he possessed under another section of the act, and which conferred upon him, if he should be satisfied that the alien was in the United States in violation of the act, authority to cause the alien within a period of three years after his landing to be taken into custody and deported. This court, construing the word "final," said: "We are of the opinion that the decision of the board has no other effect than a determination that the alien shall be permitted to land; that its functions are confined to this initial inquiry." This was affirmed by the Supreme Court in 202 U. S. 281, 26 Sup. Ct. 608, 50 L. Ed. 1029. But this does not aid us in the decision of the case now before us.

In Billings v. Sitner, 228 Fed. 315, 142 C. C. A. 607, the Circuit Court of Appeals in the First Circuit held that a board of special inquiry has no right to base its decision on the right of an alien to admission on the certificate of the inspecting medical officer, without exercising its own judgment, after considering not only the certificate, but whatever other evidence there may be touching the alien's right to enter. In that case the board of special inquiry thought it was concluded by the certificate of the examining medical officer which also had been concurred in by the board of medical officers, who had found the alien feeble-minded. Both the District Court and the Circuit Court of Appeals thought that the action of the medical examiner and that of the board of medical officers was not controlling upon the board of special inquiry, but that the latter was entitled to exercise its own judgment after considering, not only the certificate issued by the examining medical officer, but whatever other evidence there might be touching the alien's right to enter. The board of special inquiry, after hearings on May 8 and 10, 1913, voted to exclude the alien, because it assumed that it was concluded by the certificate of the medical officer, who had examined the alien under section 17 of the act and certified him to be feeble-minded, from exercising its own judgment or considering any other evidence.

The Circuit Court of Appeals said: "Section 10 of the act provides that the board's decision 'based upon the certificate of the examining medical officer' shall be final as to the rejection of aliens affected with mental or physical disability which would bring them within the excluded classes. But this cannot mean that the certificate is to take the place of a fair hearing by the board. Such a construction would result in giving the inspecting medical officer, instead of the board, the power of final decision. Although Immigration Rule 17, subdivisions 4, 5 (note), state that the board is 'virtually compelled' to base its decision upon the certificate, we hold that it has no right to do so without exercising its own judgment, after considering not only the certificate, but whatever other evidence there may be touching the alien's right to enter."

After the vote excluding the alien was passed, he was by some mistake released from custody, and on May 15, 1913, he was arrested on a warrant issued on that date by the Secretary of Labor, under section 21 of the act. The warrant directed the immigrant inspector to grant him a hearing. The board of medical officers, after examining him, certified that he was feeble-minded. This coming before the Assistant Commissioner of Immigration, he recommended deportation, and stated that no new evidence presented at the hearing on May 16th affected in any manner the decision made on May 10th, and added that the decision of the medical examiner was controlling. In commenting upon this ruling the court said: "We are obliged, upon this admission, to take the same view of the hearing under the warrant as that above taken regarding the earlier hearing before the board of special inquiry, and for the like reasons. While an excluding decision, to be final in such a case, must be based upon a medical certificate, the act has not given the power of finally determining the question of an alien's right to enter the country, even if he is afflicted with physical or mental disability, to any medical board, any more than to the medical examiner. The immigration officer or officers before whom the alien was to show cause not having exercised their own judgment, nor regarded anything beyond the medical certifi-

cates, it cannot be said that Sitner had a fair hearing under the warrant."

The alien having sued out a writ of habeas corpus, at the hearing in the District Court the immigration officials relied on the records of the board of special inquiry and of the inspectors and offered no other evidence. The alien introduced medical and other evidence tending to show that he was not feeble-minded, so that the court could exercise its own judgment as to his mental condition. The court found from the evidence that he was neither feeble-minded nor physically or mentally defective, and that he was entitled to enter and ordered his discharge. The Circuit Court of Appeals, commenting upon this, said: "No error is made to appear in the findings or rulings of the court upon the evidence before it at the hearing of the writ. Neither the medical certificates nor the findings at either hearing before the immigration officers were conclusive upon the court. As we agree with the court that neither hearing had been the fair hearing required to justify deportation, we think Sitner was rightly discharged."

A similar decision was made in the District Court of Massachusetts by Judge Morton in Ex parte Joyce, 212 Fed. 285. In that case it was held that, notwithstanding the statement in the act that the certificate of the examining medical officer was to be "final," the alien was entitled to submit to the board of special inquiry additional evidence as to her mental condition, and that it was error to deny her request to permit a medical examination to be made by outside physicians at her expense. In his opinion there is no intimation given as to the meaning of the word "final" as used in the act.

The above decisions were not rendered under the act of 1917, but under the act of 1907. But we fail to find anything in the two acts which enables us to say that they afford any justification for saying that any sound reason exists for distinguishing those cases in principle from the one now before this court. Notwithstanding the respect we entertain for the courts rendering the decisions referred to, we simply are unable to accept the conclusion at which they arrived.

This court recently held in United States v. Tod, 297 Fed. 385, 394, 395, that the decision of a board of special inquiry, based upon the certificate of the examining medical officer, was "final" as to the rejection of aliens affected with any mental disability which would bring the alien within the excluded classes. We declared: "Subject, then, only to appropriate review by the courts, the executive officers of the government have no discretion whatever to admit to the United States a person duly found to be an imbecile by the appropriate officials in accordance with the procedure of the statutes just referred to. It was, therefore, not within the power of any one to admit Pola Patton. The duty mandatorily impressed by the statute was to exclude her."

Counsel for the relator insisted upon the argument in this court that the "decision," meaning no doubt the certificate issued by the board of medical officers and which was the sixth medical certificate issued, was final and conclusive, and vacated all prior certificates, and that the Secretary of Labor was concluded by it, and had no authority to choose between the last lawful medical certificate and the prior superseded certificates. This sixth medical certificate was dated on March 22, 1923. The certificate issued by this board has been heretofore set forth in this opinion. If this board had authority to act upon this case, it may be conceded that its certificate superseded prior certificates. Rule 92 of the Regulations Governing the Medical Inspection of Aliens, issued by the Surgeon General, and which relates to re-examinations, states that medical certificates so issued "shall be regarded as nullifying and superseding all previous certificates or opinions, or parts of certificates or opinions inconsistent therewith." But the difficulty is that we fail to see what authority exists for holding that the decision of the board of special inquiry of December, 1920, which the act of 1917 made "final," can be superseded and made not "final" by the action of a board of medical officers convened on March 22, 1923. The Commissioner of Immigration and Dr. Billings, the Chief Medical Officer at Ellis Island, denied that any authority existed for the examination made on March 22, 1923, and the Commissioner was asked that the certificate be withdrawn, and the Assistant Secretary of Labor, under date of March 27, 1923, seems to have shared the same view, for in a memorandum for the board of review he stated: "Personally, I do not see where the situation has changed at all. * * * The medical certificate as it stands to-day as to either alien [the relator and her father] clearly bars both." And that is the view of this court.

[4, 5] At the argument in this court the point was stressed that this is a warrant proceeding. It is true that in the case of

aliens who are illegally in the United States they may, within the period specified in the act of 1917, be taken into custody and deported under a warrant issued by the Secretary of Labor, and that persons so arrested have the right to prove that they had a right to enter or remain. The record shows that in this case, on the failure of the sureties to surrender the alien at the time they agreed upon, a warrant was issued for the arrest of the relator. But the warrant was never served upon her, and she voluntarily gave herself up to the immigration officials. At the time the board of medical officers gave the certificate now under consideration the warrant had not even been issued. We cannot, therefore, regard the proceedings of that board as having been taken in a warrant proceeding, or that the proceeding now before us is of that nature.

A proceeding by warrant is distinguishable from the original proceedings before the immigration tribunal. Warrant proceedings are instituted after an alien has actually entered the country. When an alien arrives and applies for admission to the country, he may be detained and held without warrant until the immigration officials have determined whether he is entitled to admission. Until that question is determined, the immigration authorities need no process to detain the alien in their custody. The original jurisdiction to hold and exclude rests upon the custody of his person acquired at the time of his arrival, and this original jurisdiction continues until the question of his right to be admitted has been determined in his favor and the proceedings before the immigration officials may be regarded as closed. The admission of the relator under bond did not end the original proceedings before the immigration officials. It was a mere temporary and conditional admission, which required her to depart from the country at the expiration of six months; and if at the end of that time she was surrendered by the sureties on the bond to the immigration officials, or voluntarily came into their custody, their right to detain her without a warrant, by virtue of the original proceedings, cannot be denied. At no time was she completely discharged from custody. See Ex parte Chin Shue Wee (D. C.) 272 Fed. 480. If the right to enter and remain in the United States had once been acquired, then the relator could not thereafter have been deprived of the right without notice and an opportunity to be heard, and could not have

been taken into custody, except by a warrant. See Garfield v. Goldsby, 211 U. S. 249, 29 Sup. Ct. 62, 53 L. Ed. 168.

We have examined the Rules and Regulations Governing the Medical Inspection of Aliens, "prepared under direction of the Surgeon General," being entitled to take judicial notice of the same. Rule 90 provides: "A re-examination of an alien may be made under the direction of the chief medical officer at a port of entry whenever in his opinion it may be advisable for any reason. A re-examination of an alien under the direction of the chief medical officer shall always be made when requested by the Secretary of Labor, the Commissioner General of Immigration, the Commissioner of Immigration, or the immigration inspector in charge, but more than one such re-examination need not be made, except for the consideration of medical evidence not already considered." Rule 93 provides that, in lieu of the privilege of a re-examination as provided in rule 90, a board of medical officers may be convened to investigate the case. Rule 94 provides that such a medical board will be convened only upon application made through or by the Secretary of Labor, the Commissioner General of Immigration, or immigration inspector in charge, or on the application of a medical officer of the United States Public Health Service concerned in the case. Rule 97 directs that a medical board shall make a re-examination as prescribed in rule 90; and rule 90, as we have seen, provides that more than one re-examination "need not be made, except for the consideration of medical evidence not already considered." This seems to imply that a re-examination may be made as often as in the opinion of the officials there is "medical evidence not already considered" which warrants it.

Rule 100 provides that, when a board has concluded its proceedings and submitted its report, it shall not be reconvened, except upon specific authority of the Surgeon General. Notwithstanding what is said about re-examinations, no specific authorization is found for convening more than one board of medical officers. It nevertheless appears to be the established practice of the immigration authorities to allow a case to be reheard before successive boards of special inquiry, as well as before successive boards of medical officers. We confess we find difficulty in understanding how, after a board of special inquiry has rendered a decision which the act in section 17 specifically declares "shall be final" as to the rejection of

aliens affected "with any mental or physical disability," and from which it is expressly declared no appeal can be taken, it is nevertheless thought that power exists to convene successive boards of medical officers and successive boards of special inquiry either to take or pass upon evidence in a case already finally decided and unappealable; and even in such exclusion cases as are appealable under the act it is expressly enacted that the Secretary's decision "shall be rendered solely upon the evidence adduced before the board of special inquiry," by which undoubtedly is meant the board which rendered the "final" decision.

It appears that in this case a board of special inquiry rendered a "final" and unappealable decision. No authority to reopen a final and unappealable decision has been granted. No power to reconvene the board that rendered it has been conferred. No right exists to create another board to consider the case further. In December, 1920, and in January, 1921, the Assistant Commissioner of Immigration directed that the case of the members of the family "other than the feeble-minded girl" (this relator) be reopened for a rehearing. It was not reopened, and we do not find that authority for reopening it as to the relator existed. This case will be decided in this court upon the decision made by the first board of special inquiry, which adjudged the relator feeble-minded and ordered her deportation. As we understand the act of 1917, that decision was final and unappealable, and the Secretary of Labor was powerless to interfere with it by setting it aside or reopening it.

Before concluding this opinion, we desire to add that it is undoubtedly within the power of the Secretary in certain cases to direct that a case be reopened after a board of special inquiry has rendered its decision. The Regulations prescribed by the Surgeon General governing re-examinations are understood by us to relate to that class of cases. But in certain cases, as already indicated in this opinion, the decisions of a board of special inquiry are by the act made "final," and no appeal lies. In such cases, if the hearing has been fair, there can be no rehearing and no re-examination of witnesses. That there are cases in which no appeal to the Secretary lies, and therefore in which he is powerless to order a rehearing, is not only evident from what has been already said concerning the provisions of the act of 1917, but also from a statement at the end of section 16, in which it is said:

1 F.(2d)—17

"In the event of rejection by the board of special inquiry, in *all cases where an appeal to the Secretary of Labor is permitted by this act*, the alien shall be so informed. * * *" This plainly indicates that there are cases in which no appeal is permitted. This case belongs to the nonappealable class, and unless the hearing was unfair, either before the board of medical officers or before the board of special inquiry, a mandatory duty rested upon the immigration officials to carry the first board's decision into effect.

[6] In cases of this nature the jurisdiction of the courts is exceedingly limited. The relator was entitled to a fair hearing before the executive officers as to her right to enter the United States. This court must determine on this appeal whether that right has been denied. We have examined the record, but have not discovered the unfairness of which she complains. The next to the last assignment of errors reads: "(14) Because the relator has been ordered excluded through irregular, unfair, arbitrary, discriminatory, and unlawful action of the governmental authorities, without evidence and through abuse of discretion, and was not accorded a fair hearing." Whatever "irregular, * * * arbitrary, discriminatory, and unlawful action of the governmental authorities" and "abuse of discretion" the record discloses has been in favor of and not against this relator. Unfairness against her is not apparent.

The proceedings of the administrative officers in this class of cases can be reviewed upon habeas corpus only when these officials have manifestly abused the power and discretion conferred. Tulsidas v. Insular Collector, 262 U. S. 258, 43 Sup. Ct. 586, 67 L. Ed. 969; Ng Fung Ho v. White, 259 U. S. 276, 284, 42 Sup. Ct. 492, 66 L. Ed. 938; Chin Yow v. United States, 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369; United States ex rel. Soo Hoe Hong v. Tod (C. C. A.) 290 Fed. 689; United States ex rel. Boxer v. Tod (C. C. A.) 294 Fed. 628, 633. Unless it appears that a proper hearing has been denied, the merits of the relator's case are not open for our consideration.

[7] In Chin Yow v. United States, supra, Mr. Justice Holmes, speaking for the court, said: "But unless and until it is proved to the satisfaction of the judge that a hearing properly so called was denied, the merits of the case are not open, and, we may add, the denial of a hearing cannot be established by proving that the decision was wrong." A proper hearing having been accorded in this case the sufficiency of the

probative facts is not for this court to consider. White v. Gregory, 213 Fed. 768, 130 C. C. A. 282. The decisions of immigration officials are conclusive upon matters of fact if a fair hearing has been accorded. Gegiow v. Uhl, 239 U. S. 3, 9, 36 Sup. Ct. 2, 60 L. Ed. 114. Feeble-mindedness is a question of fact.

[8] It is claimed the proceedings were unfair, because respondent erroneously injected into the record a letter addressed by him in the course of his official duties to the Commissioner General of Immigration. But as the right to exclude the relator is based upon the decision of the board of special inquiry, made on December 3, 1920, and the letter was not written until May 12, 1923, and was addressed to one who was without power to affirm or disaffirm the decision, or to make any recommendations concerning it, it is difficult to see how it prejudiced the relator's case. And we are not concerned to inquire what took place before the second board of special inquiry, or before the boards of medical officers subsequently convened.

Order affirmed.

### On Application for Reargument.

PER CURIAM. In this case an application for a reargument has been addressed to the court, which we feel compelled to deny. This application is based upon the theory that this court was in error in holding that section 17 of the Immigration Act precluded the rehearing of the case by the board of medical officers convened on March 22, 1923, and which undertook to review a decision of a board of special inquiry made in December, 1920, and which was based on a medical certificate properly before it and declared by the act to be final and unappealable.

In the application for a reargument counsel direct our attention "to the authoritative decision of the United States Supreme Court in Lane v. United States ex rel. Mickadiet, 241 U. S. 201, 36 Sup. Ct. 599, 60 L. Ed. 956," which they say was "unfortunately not heretofore cited to the court." That decision would unquestionably be authoritative and controlling, if it were applicable to the facts of this case, which we think it plainly is not. In the Lane Case the question presented was as to the power of the Secretary of the Interior to reopen and review a previous administrative order on proper charges of newly discovered evidence or fraud while the property was still under administrative control. Act Febru-

ary 8, 1887, c. 119 (24 St. 388), providing for the allotment of lands in severalty to Indians on the various reservations, enacted that when an Indian to whom an allotment of land had been made died before the issuance of a fee-simple patent without having made a will disposing of his allotment the Secretary of the Interior should ascertain the legal heirs of such decedent and that his decision of the matter should "be final and conclusive." The Secretary of the Interior, proceeding under this act, entered an order in June, 1913, holding that certain persons were the lawful heirs of an Indian and entitled under the statute to the ownership and enjoyment of the allotted lands. Thereafter on the ground of fraud and newly discovered evidence the Secretary reopened his order of June, 1913, and directed that the matter stand for reconsideration. The question in the Supreme Court was whether the statutory provision making the Secretary's order "final and conclusive" precluded him from reopening the order in the manner he did, and while the property to which the order related was still within the administrative control of the department, because of the trust imposed by the law until the expiration of the statutory period.

The Supreme Court, sustaining the Secretary's right to do what he did, said: "The words 'final and conclusive' describing the power given to the Secretary must be taken as conferring and not as limiting or destroying that authority. In other words they must be treated as absolutely excluding the right to review in the courts, as had hitherto been the case under the act of 1887, the question of fact as to who were the heirs of an allottee, thereby causing that question to become one within the final and conclusive competency of the administrative authority. As it is obvious that the right to review on proper charges of newly discovered evidence or fraud a previous administrative order while the property to which it related was under administrative control, was of the very essence of administrative authority (Michigan Land & Lumber Co. v. Rust, 168 U. S. 589, 18 Sup. Ct. 208, 42 L. Ed. 591), it must follow that the construction upheld would not only deprive the Secretary of the final and conclusive authority which the statute in its context contemplated he should have, but would indeed render the administrative power conferred wholly inadequate for the purpose intended by the statute. And it must be further apparent that the inadequacy of authority which the proposition if accepted

would bring about could not be supplied, since it would come to pass that although the property was yet in the control of the United States to carry out the trust, there would be an absence of all power both in the administrative and judicial tribunals to correct an order once rendered, however complete might be the proof of the fraud which had procured it."

The distinction between the Lane Case and the one now under consideration is clear. The words "final and conclusive," as used in the statute construed in the former case, were employed, as the opinion of the Supreme Court states, to exclude the right of the courts to review the Secretary's decision. But in the Immigration Act the word "final" was not used to exclude the review of the decision by the courts, but to exclude any appeal therefrom · to the Secretary of Labor or to any of the immigration officials. If the board of special inquiry, which rendered the "final" decision of December 3, 1920, had seen fit thereafter to open the matter because of fraud or newly discovered evidence, and had asked the medical officers whose certificate on the medical question was before it to re-examine the relator's mental condition, and the power of the board to reopen the matter in this way had been challenged, the decision in the Lane Case would indicate that the power to reopen should be sustained. But that is not the question presented by the facts in this case.

As the Immigration Act declares that the decision of the board of special inquiry shall be "final," we are at a loss to see that either the Secretary of Labor, the Commissioner General of Immigration, the Commissioner of Immigration, or the immigration inspector in charge, who are all alike bound mandatorily by the "final" decision of the board of special inquiry, have any power to reopen the "final" decision. If under the statute they have no such power, then we fail to see that rule 90 of the Medical Regulations is justified by the statute. That rule reads as follows:

"(90) A re-examination of an alien may be made under the direction of the chief medical officer at a port of entry whenever in his opinion it may be advisable for any reason. A re-examination of an alien under the direction of the chief medical officer shall always be made when requested by the Secretary of Labor, the Commissioner General of Immigration, the Commissioner of Immigration, or the immigration inspector in charge, but more than one such

re-examination need not be made except for the consideration of medical evidence not already considered. * * * *"

Because we regard the decision of December, 1920, as "final," it is unnecessary to discuss any other question in the case.